BLANCHE H. WITHAM, APPELLEE, V. CITY OF LINCOLN, APPELLANT.

FILED OCTOBER 6, 1933. No. 28708.

*Max Kier* and *Lloyd E. Chapman,* for appellant.

*George A. Adams, G. E. Hager, Richard C. Hunter* and *Sanden, Anderson & Gradwohl, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an action in equity, wherein Blanche H. Witham, plaintiff and appellee, seeks to have certain real estate owned by her detached from the city of Lincoln, defendant and appellant.

In her petition, filed August 15, 1929, plaintiff alleges that she is the owner of a certain tract of land, which, for the purposes of this opinion, may be said to lie on the north side of East O street, immediately west of Seventieth street, which land the city of Lincoln has recently annexed by ordinance. Plaintiff alleges that said land is agricultural and farming land. The land is not subdivided into lots, nor have any streets or alleys been located thereon, nor is the land in any way benefited by

being included within the corporate limits of the city of Lincoln. That the purpose of the city in annexing said lands is to raise revenue to construct a water-main through the same to furnish water to and for the use of the Veterans' Hospital, near the plaintiff's land, and plaintiff prays that her land may be adjudged not suitable for city purpose, and be taken out of the city, and relieved from the control and management of the city.

The answer of the city of Lincoln admits that it is a municipal corporation, operating under a Home Rule Charter adopted November 14, 1917. That on July 29, 1929, an ordinance, No. 3061, extended the corporate limits of the city of Lincoln from Fifty-eighth street to Seventieth street, thereby including the real estate of plaintiff lying on East O street. That O street was paved by the state of Nebraska to Seventieth street, without expense to the plaintiff, and that a large water-main running east on O street to Seventieth street will supply abutting property for domestic and industrial purposes. That immediately east of Seventieth street, and just south of O street, the United States Government has erected the Veterans' Hospital. The city alleges that the real estate of the plaintiff is strictly urban in character, and has a distinct unity of interest with the older portions of the city, and has been materially benefited by annexation thereto. That plaintiff cannot collaterally and indirectly attack the validity of ordinance No. 3061, annexing the said property, but that only the state of Nebraska can question the same, and that plaintiff has an adequate remedy at law; and asks that plaintiff's petition be dismissed. To this answer a reply was filed by the plaintiff.

Upon trial of the issues, nearly 500 pages of evidence were taken, and 35 exhibits introduced, including four large airplane photographs, showing the land in question, as well as the surrounding lands. The evidence discloses that the ordinance, No. 3061, annexed a narrow strip of land, reaching for nearly a mile east of Cotner boulevard,

and running along O street to Seventieth street, but extending only 400 feet on either side of O street.

The plaintiff's land lies on the north side of O street, and at the extreme east end of the strip annexed. It is a part of an ordinary farm of 99 acres, and was planted to corn and wheat by the plaintiff's husband. There are no improvements or buildings of any kind on the part of the plaintiff's land which is annexed to the city.

Edward C. Witham, the husband of plaintiff, admitted that the street was paved in front of their land without expense to the plaintiff; that there was motor service by bus of the city street railway in front of their property; that there was natural gas service, and that a sanitary sewer had been constructed through their land, all without cost to the plaintiff. He admitted that he made no objection to the building of the 8-inch water-main along O street, and that the plaintiff would not now object if the water-main had been built free of cost to her, as were all of the other city improvements mentioned. The plaintiff has not used gas, electricity, nor water upon the farm, and does not desire the same. That the assessments against plaintiff's land, because of the construction of the water-line to the Veterans' Hospital, will amount to above $2,000. That a number of witnesses, familiar with the situation, testified in favor of the plaintiff to the effect that the land is, and always has been, ordinary farm land. That no benefits resulted from its annexation to the city, and that it would simply result in heavy burdens of city taxes for the water-main and other special assessments. That the land sometimes is flooded from a creek running through it, known as Dead Man's Run.

Frank D. Eager testified that, as vice-president of the Chamber of Commerce of Lincoln, he personally submitted the proposal of the Chamber to the U. S. Veterans' Bureau to get the hospital located in Lincoln, and that proposal stated that a city water-main would be extended to the southwest corner of the proposed site of the hospital at Seventieth and A streets, free of cost, but that

the original plan to get water to the Veterans' Hospital via A street was changed, and the water-main leading to the Veterans' Hospital was finally located in East O street.

Charles G. Beck, manager of the U. S. Veterans' Hospital, testified that the total construction cost to date had been $1,167,904, which did not include the cost of the real estate, of $92,000.

The evidence further discloses that a civil engineer employed by the Sanitary Sewer District built the sewer which follows Dead Man's Run, and that it is only used by the Veterans' Hospital, and that there was no request for sewer from private owners. Harvey Rathbone, Charles Stuart, J. H. Humpe, and Frank D. Eager, all engaged in the real estate or investment business, together with some others, testified that the plaintiff's land was urban in character, but the majority of these witnesses admitted that they were speculating upon future possibilities of the growth of the city, rather than upon the actual condition today of the land annexed.

The trial judge made a personal inspection of the premises, and in his decree held that the plaintiff's real estate had been used for many years as farm land, and for no other purpose; that no part of the land had ever been platted into lots or blocks, and that it is in no wise urban property, but is solely agricultural land, which will not at the present time be benefited by being annexed to the city; that the object of the defendant city in passing said ordinance and annexing said lands, or attempting to do so, was to raise revenue, and that such annexation was at the time, and is now, destructive to the value of the land and confiscatory of the property of the plaintiff. The trial court further found that it was beyond the power of the city of Lincoln to annex said land, and that its attempt so to do was wrongful and without authority of law, and found generally for the plaintiff, and that the ordinance passed, annexing said land, was of no force or effect, and that said land be considered as out-

side of the boundaries of the city, and that the taxes levied or assessed upon said land be declared invalid and no lien upon the property.

In the motion for a new trial, the city set out many grounds therefor, which may be summarized as alleging misconduct on the part of the plaintiff; accident and surprise, which ordinary prudence of the city could not have guarded against; that the decree was not sustained by sufficient evidence, and is contrary to law; and in the assignments of error the constitutionality of sections 15-104 and 15-105, Comp. St. 1929, is attacked; and charged that the court was without authority to cancel and discharge the taxes and special assessments.

■ It may be admitted that, in passing ordinance No. 3061, annexing this territory, the city proceeded under section 2, art. I of the Home Rule Charter of the city of Lincoln, which provided: "The corporate limits of the city shall be those existing when this charter becomes effective, and the council may thereafter by ordinance alter the same to the extent and in the manner provided by law, and upon conditions in such ordinance prescribed," which section appears to be the only express provision in the Home Rule Charter for the annexation of territory, and that this section adopts as a part of the charter, by the general reference in the section quoted, sections 15-101 to 15-105, Comp. St. 1929, to the same extent as if such sections were set forth in the Home Rule Charter.

It may be admitted that the statute provides methods for detaching land which has been annexed, but this action is brought under the general equity power of the court, without reference to any statute to determine whether the owner of agricultural land, which has been annexed to a city against his will, can have it detached therefrom.

Plaintiff insists that courts of equity may place a limitation upon annexation of such land by a municipality, and that such courts have the power and duty to protect the rights of an owner of agricultural land from being

compelled to pay large assessments of taxes for benefits which are of no value to his farm land, and which have been installed under the direction of the city, not by the request of the property owners living on such annexed land, but for an entirely different purpose, such as appears from the evidence in this case.

"Under the general chancery and common-law powers conferred by the Constitution, and without reference to statute, district courts are vested with jurisdiction to hear and determine whether an owner of agricultural lands included within the corporate limits of a city is entitled to have the same disconnected therefrom." *Sole v. City of Geneva*, 106 Neb. 879. See *Village of Osmond v. Smathers*, 62 Neb. 509.

■ The city charges in its brief that the trial judge in the case at bar relied upon a case which has been overruled. Let us examine these two cases thus brought to our attention.

In the early case of *Bradshaw v. City of Omaha*, 1 Neb. 16, plaintiff alleged that his land was two miles from the settled part of the town and one mile from any lands occupied as town lots, and that he did not intend to divide it into lots for town purposes, and that his property was annexed for the sole purpose of subjecting his land to city taxation, and prayed for an injunction to restrain the sale of his property for delinquent city taxes. In the long opinion by Chief Justice Mason, he asked the question, "Can a legislature authorize a city to tax for its support, lands not reasonably to be considered city property?" After reviewing many of the leading cases prior to 1871, he set out certain tests of the liability of such lands to taxation by a city, and held that, if the lands had been divided by the owner into town lots, or if the owner had done any other affirmative act inducing the authorities of the city to treat his land as town property, he would be justly liable for municipal taxation, but if the lands he retains are in a large body, located a half mile from the settled part of the town, and no streets

need to be opened up for the use of adjoining lot owners, then it was proper to enjoin the collection of such taxes, and he states that, while each case must be determined by its own circumstances, these tests were offered to furnish an easy solution of any case which might arise in the future.

The defendant city, in its very complete brief of more than 100 pages, insists that the case of *Bradshaw v. City of Omaha, supra,* was overruled by the case of *Turner v. Althaus,* 6 Neb. 54, but the writer of that opinion used this language: "In conclusion, for the purpose of guarding against any erroneous inference which might be drawn from this opinion, it is proper to state, that the issues in the case at bar do not present for our consideration one in which it may clearly appear that the *sole* object of the legislative act, extending the power of taxation by a city over a community or lands beyond its original limits, is to increase its revenues only, and not for the purpose of any municipal regulations or government over the same."

This court has held that a municipality cannot annex property for revenue purposes, as appears to have been done in the case at bar. *Joerger v. Bethany Heights,* 97 Neb. 675; *Village of Osmond v. Smathers,* 62 Neb. 509.

It is found that many of the cases cited in briefs arise under the law relating to the detaching of territory from cities of the second class and villages, as set out in section 17-412, Comp. St. 1929, yet the references in those cases to the power of a court of equity to protect an owner of agricultural lands whose rights have been infringed may well be considered in passing upon this case. *Sole v. City of Geneva,* 106 Neb. 879; *State v. Dimond,* 44 Neb. 154; *Village of Osmond v. Smathers,* 62 Neb. 509; *Commonwealth Real Estate Co. v. City of South Omaha,* 78 Neb. 368; *Gregory v. Village of Franklin,* 77 Neb. 62.

■ We have carefully considered the plaintiff's land in reference to its possibilities for use as urban property. There is evidence of Charles Stuart showing that, with an

expenditure of approximately $250,000 for paving, gas, sewers, water-mains, sidewalks, and electrolier system, the lots in Piedmont addition, located more than a mile nearer the city, have not found ready sale, while other additions between Piedmont and the plaintiff's land have been platted, put on the market, and the owners have failed to sell a single lot. These and other facts, to determine whether the plaintiff's property is urban or agricultural in character, were personally examined into by the trial court when it made a personal inspection of these and adjoining lands. The finding of the trial court in relation thereto is entitled to great weight.

It is insisted by the city that this case is of tremendous importance to the city of Lincoln, and that an adverse decision will in a measure hamper the continued growth and prosperity of this fine city. This court does not share this dire forecast, but believes that, as the natural growth of the city requires the annexation of subdivisions lying contiguous to the city, the owners thereof will plat the same and urge their annexation to the city as the needs demand. We are constrained to hold that the city exceeded its power when it annexed a narrow strip of plaintiff's land, reaching out like a finger, along the exact location of an 8-inch water-main required to be constructed to the Veterans' Hospital, and that such annexation of such farm land was wrongful and without authority, and that said land shall be considered as outside of the boundaries of the city, and that the taxes levied for the construction of such water-main are declared invalid, and the decree of the district court is

AFFIRMED.