277 Neb. 829
THE COUNTY OF SARPY, NEBRASKA, A BODY CORPORATE AND POLITIC, APPELLEE AND CROSS-APPELLANT,
v.
THE CITY OF PAPILLION, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT AND CROSS-APPELLEE.
No. S-08-166.
Supreme Court of Nebraska.
Filed May 22, 2009.
Michael N. Schirber, of Schirber & Wagner, L.L.P., for appellant.
L. Kenneth Polikov, Sarpy County Attorney, Michael A. Smith, and Kerry A. Schmid for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The County of Sarpy, Nebraska (Sarpy), challenged two ordinances passed by the City of Papillion, Nebraska (Papillion), that purported to annex land and portions of several streets, including Highway 370. Sarpy also challenged the ordinance that redrew the zoning area for Papillion as a result of the newly acquired land. Sarpy alleged that the annexations were null and void and that an injunction should be issued against the ordinances, because the properties were not contiguous to the municipality, as required by Neb. Rev. Stat. § 16-117 (Reissue 2007). Papillion disagreed and argued that Sarpy lacked standing to bring its challenge.
The district court found all parts of the annexations to be adequately contiguous, with the exception of two "tails" running the approximate width of two roads traveling away from the farthest ends of larger annexation areas. Because the land in ordinance No. 1527 was described altogether in a single paragraph, the court found the entirety of that ordinance to be ineffective. Because ordinance No. 1526 involved more complex descriptions of four separate areas, one being simply the tail, the court found that tail to be severable from the remainder of the ordinance and found that ordinance enforceable with the exception of the paragraph describing the tail. The court granted a permanent injunction consistent with these conclusions, but did not specifically state in its conclusion that any ordinance was null and void. Papillion appeals, and Sarpy cross-appeals.

FACTS
Appendix A to this opinion is a map of Papillion and the proposed annexations. Papillion, shown in the area shaded light gray, is shaped like a rectangular puzzle piece. Especially on the west and east sides, Papillion's border does not run in a smooth line. Papillion passed ordinance No. 1526 to annex land and roads to the west and southwest of the city. It passed ordinance No. 1527 to add land and portions of a road directly to the south of the city limits. Ordinance No. 1529 did not annex any property, but simply changed the official zoning map of the city to reflect the newly annexed areas.
The area to be annexed by ordinance No. 1526 is a complex shape and was described in four separate metes and bounds descriptions. First, the ordinance sought to annex Highway 370, along with varying degrees of land surrounding Highway 370, from 84th Street to a point west of 96th Street, shown in the map as 1526, section "A." Portions of Highway 370 were already part of Papillion as it ran from the east end through the city. This part of ordinance No. 1526 sought domain over Highway 370 as it continued to run adjoining along the north side of a jagged southern edge of the city. It also sought to annex the highway as it ran approximately a quarter mile from one part of the city to another.
After passing this most southwestern point of the previous city limits, near 96th Street, the area to be annexed expands beyond simply the highway corridor, into an approximate quarter-mile-wide parcel labeled section "B," filling in gaps between the jagged edges of the city. This quarter-mile area continues west and becomes part of a large square shape, section "E," that encompasses the Walnut Creek Lake and Recreation Area and the Papillion-La Vista South High School.
After 108th Street, the square, section E, ends, and the area to be annexed becomes simply a corridor around Highway 370 as it continues west away from Papillion for approximately 4 miles until it reaches Interstate 80. This highway corridor, designated on the map as section "F," is described in a single metes and bounds description in the second paragraph of the ordinance.
Back toward the preexisting city limits, to the north of Highway 370, ordinance No. 1526 sought to annex approximately 1.4 miles of 96th Street as it runs parallel to the city until it reaches a portion of 96th Street already part of Papillion. This area is referred to in the map as section "C."
Finally, ordinance No. 1526 sought to annex First Street from an eastern point deep inside and completely surrounded by the city limits, through an approximate quarter-mile corridor not touching city land, but then reconnecting alongside the city at its most western point. This portion of the annexation is designated in the map as section "D."
The area sought to be annexed by ordinance No. 1527 was simpler. It is a triangular area of land bordered on its north side by approximately one-half mile of the southern limits of the city, and another side on the west side by 84th Street. This is shown on the map as 1527, section "A." But the ordinance also sought to annex what is shown on the map as section "B": the 84th Street corridor running almost three-quarters of a mile beyond the corner of the triangle until reaching Capehart Road. All of the property to be annexed was described in ordinance No. 1527 as a single area, with a single metes and bounds description set forth in a single paragraph.
Sarpy filed a complaint with the district court asking that it issue a temporary injunction prohibiting enforcements of ordinances Nos. 1526, 1527, and 1529 and that upon a final hearing, the court permanently enjoin Papillion from implementing the annexations. Sarpy also asked that the court declare these ordinances null, void, and of no legal effect. The parties stipulated that ordinances Nos. 1526 and 1527 complied with Neb. Rev. Stat. § 16-405 (Reissue 2007) and that the language of the ordinances was sufficient to effectuate the annexation of the described tracts. The dispute thus centered on whether the areas to be annexed were "adjacent" to the city, as required by § 16-117(1).
At trial, Sarpy presented witnesses and affidavits testifying to the fact that the annexation of these areas by Papillion would cause the Sarpy County building and planning departments to lose approximately 25 percent of their revenue because of lost zoning administration and development administration fees. And it presented maps, drawn to scale, reflecting the areas sought to be annexed. Papillion presented the testimony of Arthur Beccard, a professional engineer, who concluded that the areas described in the ordinances were "adjacent" to the city. Beccard stated that the length of the adjacency of the land described in ordinance No. 1526 was 3.59 miles and that the length of the adjacency of the land in ordinance No. 1527 was .48 miles, although he did not testify in any detail as to the areas measured. Beccard also described the land to be annexed by ordinance No. 1526, including the three-quarter-mile corridor of 84th Street, as a single "tract" of land. Beccard explained that some of the gaps in the annexation areas were agricultural lands.
The district court concluded that ordinance No. 1526 was a lawful annexation with the exception of the Highway 370 tail, section F of the appendix A map. The court concluded that because the tail was described separately in the ordinance, it could be severed from the rest of the ordinance. The court found the 84th Street tail, section B of 1527 on the map, also violated the statutory adjacency requirements. But because the land to be annexed by ordinance No. 1527 was described as a single unit, the court concluded that the entirety of that ordinance was unlawful. The court granted a permanent injunction as to the entirety of ordinance No. 1527 and as to the second paragraph of ordinance No. 1526. Papillion appeals, and Sarpy cross-appeals.

ASSIGNMENTS OF ERROR
Papillion asserts that the district court erred in granting Sarpy a permanent injunction as to part of ordinance No. 1526 and as to ordinance No. 1527.
Sarpy cross-appeals, asserting that the district court (1) erred in failing to declare the ordinances null and void, rather than simply ordering a permanent injunction, and (2) erred in not enjoining the entirety of ordinance No. 1526.

STANDARD OF REVIEW
[1,2] An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity.[1] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[2]

DISCUSSION

STANDING
[3] First, we address Papillion's allegation that Sarpy lacked standing to bring this action for temporary and permanent injunctions. In County of Sarpy v. City of Gretna,[3] we held that a county's governmental function is a legally protectable interest and that annexation of county property by a city infringes upon, in a variety of ways, that function. Therefore, we said, if a county alleges that a city, through an unlawful annexation plan, has encroached upon its governmental function, it has alleged an injury sufficient to give it standing to challenge the annexation plan.[4] In this case, Sarpy has illustrated that its governmental functions are infringed upon by the annexations, both fiscally and in other ways. We find that Sarpy has standing in this suit.
We thus consider whether the district court was correct in its evaluation of what was and was not a valid annexation by the ordinances. In essence, Papillion asserts that all of the annexations were proper and that the district court should not have granted Sarpy any injunction, while Sarpy asserts that all the annexations were improper and that Papillion should have been enjoined from enforcing any portion of any of the ordinances.

ADJACENCY
[4-6] Papillion is a municipal corporation, or city, of the first class. A municipal corporation has no power to extend or change its boundaries otherwise than as provided by constitutional enactment or as it is empowered by the Legislature by statute to do.[5] The power delegated to municipal corporations to annex territory must therefore be exercised in strict accord with the statute conferring it.[6] The burden is on one who attacks an annexation ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.[7]
[7] Cities of the first class are given authority under chapter 16 of the Nebraska Revised Statutes, and specifically § 16-117, to extend their city limits, subject to certain limitations.[8] Sarpy argues that ordinances Nos. 1526, 1527, and 1529 are invalid in their entirety because the land described was not substantially adjacent to the city as required by § 16-117, but instead contained unlawful "strip" annexations.[9] Papillion generally denies this characterization and argues that the conclusions of its expert witness were unrebutted by Sarpy. We note at the beginning that we give no weight to Beccard's conclusions as to whether the annexation areas were "adjacent" as required by § 16-117(1) or whether they were "tracts" of land as also described by chapter 16. Rather, we agree with Sarpy that the maps speak for themselves, and it is up to the courts to determine whether the areas shown by the maps, and otherwise physically described by expert testimony, satisfy the legal requirements set forth by chapter 16.
Section 16-117(1) states generally that the mayor and city council of a city of the first class may, by ordinance, "at any time include within the corporate limits of such city any contiguous or adjacent lands, lots, tracts, streets, or highways as are urban or suburban in character and in such direction as may be deemed proper." (Emphasis supplied.) The city is specifically prohibited from annexing "agricultural lands which are rural in character."[10] Contiguity or adjacency is also not specifically defined by statute, but Neb. Rev. Stat. § 16-118 (Reissue 2007) states that "[l]ands, lots, tracts, streets, or highways shall be deemed contiguous although a stream, embankment, strip, or parcel of land not more than two hundred feet wide lies between the same and the corporate limits."
[8-12] We have held that the terms contiguous and adjacent in annexation statutes are synonymous.[11] The terms mean "adjoining," "touching," and "sharing a common border."[12] We have also explained that in order to satisfy the requirements of § 16-117, the entirety of the connecting boundary need not be touching. Instead, the boundaries must be sufficiently or substantially joined together.[13] We have held that "'[s]ubstantial adjacency'" between a municipality and annexed territory exists when a substantial part of the connecting boundary of the annexed land is adjacent to a segment of the boundary of the city or village.[14] A municipality may annex several tracts as long as one tract is substantially adjacent to the municipality and the other tracts are substantially adjacent to each other.[15]
[13] We have explained that the root of the adjacency requirement is the idea that a city, both by name and use, is one entity, a collective body of people gathered together in one mass, not separated into distinct masses, and having a community of interest because they are residents of the same place.[16] So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation.[17]
[14] So-called "strip" or corridor" annexations do not comport with either adjacency requirements or the idea of a unified municipal entity. In Johnson v. City of Hastings,[18] the city annexed a 120-foot-wide strip of highway to reach a larger tract of land containing a community college campus. The annexed tract was shaped like a "saucepan," with the handle attached perpendicular to the city. We explained that the annexation of a portion of a highway extending beyond the border of a municipality, connected only by the width of that highway, was an invalid strip or corridor annexation.[19] Since the boundaries of the tract sought to be annexed were not substantially adjacent to the city's corporate limits, the annexation was improper and the ordinance was null and void.
Likewise, in Cornhusker Pub. Power Dist. v. City of Schuyler,[20] we concluded that the city's annexation ordinance was null and void when it sought to annex a U-shaped strip as it wrapped around a large county industrial tract until the strip could reach and annex a 26-acre rectangular tract on the other side of the county tract. While the approximately 30-foot-wide strip began parallel and adjacent to the boundaries of the city, it continued past the city limits for some length, changing directions and continuing even farther away from the city, and then turned up, running parallel to the city on the other side of the industrial tract. The 26 acres then bulged out from the final length of the strip like a flag on a flagpole. In total, the strip was approximately 1V4 miles long. We explained that there was insufficient adjacency between any of the annexed tracts and the existing corporate limits of the city to uphold the validity of any portion of the ordinance.
Most recently, in County of Sarpy v. City of Gretna,[21] we found two ordinances void when each only sought to annex strips of highway running perpendicular away from the city limits. The city argued that these were not unlawful strip annexations because the annexed strips were not just a means to reach a larger, sought-after property. We rejected this argument, however, explaining: "The invalidity of a strip annexation is not based upon the existence of a larger tract at the distal end of the strip, but, rather, upon the lack of substantial adjacency where the proximal end meets the corporate limits of the city."[22] We also stated that the shape of the tract to be annexed was not, in itself, determinative of whether it can be lawfully annexed, but that the lack of substantial adjacency was. Despite recognizing that the city may have had legitimate reasons to annex the highways for its planning and land-use control objectives, we found that there was not substantial adjacency when the connecting points consisted "merely of the width of the highway right-of-way."[23]
But so long as a substantial part of the connecting boundary touches the corporate limits, an annexation will not be void simply because parts of the connecting side do not touch the city or because portions of the annexed territory are narrower than the rest. In Swedlund v. City of Hastings,[24] for instance, we rejected the property owners' argument that the annexation of a larger residential tract was improperly reached by a "narrow strip" and that the annexation was void for its failure to be adjacent to the city limits.[25] While the abutting property may have been narrower than the other properties connecting to it, we explained that this narrower corridor was, in fact, approximately six blocks wide and was therefore not a "strip" at all. Moreover, the entire boundary of the width of the corridor was adjoining the preannexation corporate boundary. The other properties annexed were, in turn, contiguous to different parts of the six-block-wide corridor. Thus, considering the annexation area as a whole, we found that it satisfied the contiguity and adjacency requirements of the applicable annexation statute.
Sarpy does not contest the contiguity of the main bodies of the two annexation areas identified in the appendix A map, section A of 1527 and section E of 1526. But it argues that in addition to the 4-mile tail along Highway 370, parts of sections A and C of 1526 are unlawful where they fail to touch the city limits. Sarpy also argues that under Wagner v. City of Omaha,[26] the court should have found the entirety of ordinance No. 1526 void, because the section B tail identified in the map was not severable from the rest of the ordinance.
As for the arms of sections A and C of 1526, we agree with the district court that Sarpy has failed to show how these defeat the annexation's contiguity to the city. The arms radiate out from either side of a larger area that is touching the city almost the entirety of two sides of its roughly rectangular shape. The arms then run flush alongside the city, with an approximately one-third length of nontouching "bridge" on the Highway 370 arm and an approximately one-half length of nontouching "bridge" on the 96th Street arm. But in both instances, the "bridges" run parallel to some part of the city and are no more than approximately 1,250 feet from that parallel border.
The apparent object of these arms is to further the contiguity and unity of the city's borders by filling in gaps of the city's irregular shape. Through the annexations, the city also seeks domain over easily identifiable lengths of road, rather than disparate smaller lengths. These arms connect the city together and make it more cohesive. The simple fact that there is some length of nontouching highway right-of-way does not make an annexation invalid for failure to be substantially adjacent to the city. Viewed together with the larger tracts annexed by ordinance No. 1526 and the points before and after these parallel "bridges" which reconnect with the city, we do not find these areas to be in violation of § 16-117.
But we agree with Sarpy and the district court that the tails created by each ordinance, section F of 1526 and section B of 1527, are inconsistent with the contiguity and adjacency requirements of § 16-117 and cannot be considered part of the cohesive whole otherwise created by these annexations. Papillion points out that, unlike other cases considered by our court, the ordinances do not seek to annex simply the road corridors or reach out to a larger target of the annexation. But the fact remains that these strips are attached perpendicularly to the newly annexed larger corporate boundaries merely by their width. Furthermore, they stretch away from the city. As we explained in City of Gretna,[27] when a long strip runs perpendicularly away from the city attached by only the width of one end, it cannot be considered substantially adjacent. This understanding of what is substantially adjacent is not changed by the fact that the strip attaches to a larger area of land annexed by the same ordinance, regardless of whether Papillion's experts call this a single tract or not. On the maps of the annexations, these two strips stick out from the corporate boundaries like sore thumbs. Even viewed together with the other areas annexed, section F of 1526 and section B of 1527 clearly violate § 16-117. The question then becomes whether these violations invalidate the entirety of the ordinances allowing for them.

SEVERABILITY
[15, 16] Generally, the partial invalidity of an ordinance does not necessarily make the remaining provisions of the ordinance ineffective.[28] If a city ordinance contains valid and invalid provisions, the valid portion will be upheld if it is a complete law, capable of enforcement, and is not dependent upon that which is invalid.[29] In other words, the valid part may be carried into effect if what remains after the invalid part is eliminated contains the essential elements of a complete ordinance.[30] A severability clause is not necessary to maintain the partial validity of a law under these standards.[31]
Section 16-117(2) specifically attempts to clarify that the partial invalidity of an annexation ordinance will not invalidate the whole. It provides that "[t]he invalidity of the annexation of any tract of land in one ordinance shall not affect the validity of the remaining tracts of land which are annexed by the ordinance and which otherwise conform to state law." A "tract of land" is not specifically defined in chapter 16 or in any relevant case law.
In the case cited by Sarpy, Wagner v. City of Omaha,[32] a single ordinance sought to annex 490 acres of land. It is unclear how the ordinance described the 490 acres. We noted that while a large part of the area had been platted and was strictly residential or urban agricultural, there were also two unplatted tracts containing between 90 and 103 acres of agricultural lands rural in character. As such, we concluded that by including these rural lands, the city had exceeded its statutory authority. We further concluded that this error invalidated the entirety of the annexation ordinance, explaining that "`the drawing of boundary lines is a legislative act'"[33] and that as such, "we have no authority to revise the boundary line of the city, as extended by the ordinance."[34]
In the more recent case of Swedlund v. City of Hastings,[35] we considered whether the annexed property was adjacent to the city and whether it was rural in character. We noted that the land annexed was described by a single metes and bounds description. And we stated in dicta that if any portion of the land violated the requirements of § 16-117, then the entire ordinance would be invalid.[36]
We determine that the fundamental issue is whether the offending tails in the Papillion ordinances are described in such a place and manner in the ordinances that they can be redacted, leaving intact the essential elements of a complete ordinance without the necessity of any redrawing of boundary lines. We agree with the district court that this can be done for ordinance No. 1526, but not for ordinance No. 1527. In ordinance No. 1526, the 4-mile-long Highway 370 tail is described in a separate paragraph containing its own metes and bounds description, which in no way affects the descriptions of the other areas sought to be annexed.
But in ordinance No. 1527, not only is the entirety of the property described in a single metes and bounds description, but within that description, the 84th Street corridor is set forth from the beginning point of the entire annexation area straight to the northerly right-of-way line of Capehart Road. It is not possible to simply redact the language that creates this unlawful appendage and leave a coherent metes and bounds description behind. In other words, when the invalid portion of the ordinance is removed, there are no longer the essential elements of a valid ordinance. The invalidity of the tail in ordinance No. 1527 causes the ordinance to be invalid in its entirety.

NULL AND VOID VERSUS PERMANENT INJUNCTION
The district court was thus correct in issuing a permanent injunction as to the entirety of ordinance No. 1527 and as to only the 4-mile Highway 370 tail described in the second paragraph of ordinance No. 1526, which is section F of the appendix A map. We find no merit to Sarpy's assignment of error that the district court failed to specifically declare these attempted annexations null and void. In fact, the district court states in its order: "[T]his Court concludes that Papillion's `strip' or `corridor' annexation attempts sought through Ordinances #1526 and #1527 are invalid, and therefore must be declared null and void." As to ordinance No. 1527, the court later states the entire ordinance must be "struck down." As to ordinance No. 1526, the court concluded that only the second full paragraph needed to be "struck" and that the ordinance would be "invalidated" as to that provision. We conclude it to be of no consequence that the court failed to state in its order after the sentence beginning with "It is Therefore Ordered and Adjudged" that these provisions were "null and void." The remedy for an annexation in violation of § 16-117 is a permanent injunction, and that is the remedy Sarpy received.

CONCLUSION
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.

APPENDIX A

NOTES
[1] City of Elkhorn v. City of Omaha, 272 Neb. 867, 725 N.W.2d 792 (2007).
[2] Id.
[3] County of Sarpy v. City of Gretna, 267 Neb. 943, 678 N.W.2d 740 (2004).
[4] Id.
[5] Doolittle v. County of Lincoln, 191 Neb. 159, 214 N.W.2d 248 (1974).
[6] County of Sarpy v. City of Gretna, 273 Neb. 92, 727 N.W.2d 690 (2007).
[7] See SID No. 57 v. City of Elkhorn, 248 Neb. 486, 536 N.W.2d 56 (1995), disapproved on other grounds, Adam v. City of Hastings, 267 Neb. 641, 676 N.W.2d 710 (2004).
[8] § 16-117.
[9] Brief for appellee at 12.
[10] § 16-117(1).
[11] See, e.g., Cornhusker Pub. Power Dist. v. City of Schuyler, 269 Neb. 972, 699 N.W.2d 352 (2005).
[12] Concise Oxford American Dictionary 11, 196 (2006).
[13] See Wagner v. City of Omaha, 156 Neb. 163, 55 N.W.2d 490 (1952).
[14] Swedlund v. City of Hastings, 243 Neb. 607, 611, 501 N.W.2d 302, 305 (1993).
[15] City of Elkhorn v. City of Omaha, supra note 1.
[16] Village of Niobrara v. Tichy, 158 Neb. 517, 63 N.W.2d 867 (1954). See, also, Johnson v. City of Hastings, 241 Neb. 291, 488 N.W.2d 20 (1992).
[17] Id.
[18] Johnson v. City of Hastings, supra note 16. See, also, Witham v. City of Lincoln, 125 Neb. 366, 250 N.W. 247 (1933).
[19] Johnson v. City of Hastings, supra note 16.
[20] Cornhusker Pub. Power Dist. v. City of Schuyler, supra note 11.
[21] County of Sarpy v. City of Gretna, supra note 6.
[22] Id. at 98, 727 N.W.2d at 695.
[23] Id.
[24] Swedlund v. City of Hastings, supra note 14.
[25] Id. at 611, 501 N.W.2d at 305-06.
[26] Wagner v. City of Omaha, supra note 13.
[27] County of Sarpy v. City of Grema, supra note 6.
[28] See Arrigo v. City of Lincoln, 154 Neb. 537, 48 N.W.2d 643 (1951).
[29] Dell v. City of Lincoln, 170 Neb. 176, 102 N.W.2d 62 (1960); Arrigo v. City of Lincoln, supra note 28.
[30] Zimmerer v. Stuart, 88 Neb. 530, 130 N.W. 300 (1911); In re Langston, 55 Neb. 310, 75 N.W. 828 (1898).
[31] See Robotham v. State, 241 Neb. 379, 488 N.W.2d 533 (1992).
[32] Wagner v. City of Omaha, supra note 13.
[33] Id. at 170, 55 N.W.2d at 495, quoting State, ex rel., v. City of Largo, 110 Fla. 21, 149 So. 420 (1933).
[34] Id.
[35] Swedlund v. City of Hastings, supra note 14.
[36] Id.