# CASES DETERMINED

## IN THE

# SUPREME COURT OF NEBRASKA

---

Sanitary and Improvement District No. 196 of
Douglas County, Nebraska, appellant, v.
City of Valley, Nebraska, appellee.

___ N.W.2d ___

Filed February 6, 2015.    No. S-13-880.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives the party the benefit of all reasonable inferences deducible from the evidence.
2. **Annexation: Ordinances: Equity.** An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity.
3. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
4. **Municipal Corporations: Annexation.** Neb. Rev. Stat. § 17-405.01 (Reissue 2012) provides that cities of the second class may annex contiguous or adjacent lands which are urban or suburban in character and not agricultural lands which are rural in character.
5. **Municipal Corporations: Annexation: Constitutional Law: Legislature: Statutes.** The power delegated to municipal corporations to annex territory must be exercised in strict accord with the statute conferring such power, because a municipal corporation has no power to extend or change its boundaries other than as provided by constitutional enactment or as it is empowered by the Legislature by statute to do.
6. **Summary Judgment: Proof.** A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that if the evidence presented for summary judgment remains uncontroverted, the moving party is entitled to judgment as a matter of law.
7. ____: ____. After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party.

8. **Summary Judgment: Evidence.** A summary judgment involves a judicial evaluation of evidence to determine whether an issue of material fact exists and, therefore, is a factual determination resulting in a disposition of the factual merits of a controversy.

9. **Summary Judgment: Expert Witnesses: Testimony.** A conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment.

10. **Municipal Corporations: Annexation: Agriculture.** Neb. Rev. Stat. § 17-405.01 (Reissue 2012) expressly limits a city of the second class from exercising its annexation power over any agricultural lands which are rural in character.

11. **Municipal Corporations: Annexation.** To determine whether lands are urban or suburban, the test is whether a city has arbitrarily and irrationally used the power granted therein to include lands entirely disconnected, agricultural in character, and bearing no rational relation to the legitimate purposes of annexation.

12. **Agriculture: Words and Phrases.** Agriculture is defined as the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock.

13. **Municipal Corporations: Annexation.** The contiguous or adjacent requirement in statutes governing the annexation powers of cities determines how substantial the link between the city and the annexed area must be.

14. **Municipal Corporations: Annexation: Words and Phrases.** The terms "contiguous" and "adjacent" are used synonymously and interchangeably, and if the territory sought to be annexed is not contiguous to the municipality, the proceedings are without legal effect.

15. **Annexation: Boundaries: Words and Phrases.** Contiguity means that the two connecting boundaries should be substantially adjacent.

16. **Municipal Corporations: Annexation.** Substantial adjacency between a municipality and annexed territory exists when a substantial part of the municipality's boundary is adjacent to a segment of the boundary of the city or village.

17. ____: ____. A municipality may annex several tracts as long as one tract is substantially adjacent to the municipality and the other tracts are substantially adjacent to each other.

18. ____: ____. The annexation of land to cities and towns is a legislative function, and it is for their governing bodies to determine the facts which authorize the exercise of the power granted.

19. **Annexation: Taxation.** It is improper for an annexation to be solely motivated by an increase in tax revenue.

20. **Ordinances: Proof.** The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Affirmed.

James E. Lang and Kathleen M. Foster, of Laughlin, Peterson & Lang, for appellant.

Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, and Jeffrey B. Farnham and Andrea M. Griffin, of Farnham & Simpson, P.C., L.L.O., for appellee.

HEAVICAN, C.J., CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

HEAVICAN, C.J.

## NATURE OF CASE

Sanitary and Improvement District No. 196 (SID 196) filed a complaint in Douglas County District Court seeking to declare ordinance No. 611 of the City of Valley, Nebraska, invalid and enjoin its enforcement. Ordinance No. 611 authorized the annexation of land near Valley's corporate border, some of which includes SID 196. The district court granted Valley's motion for summary judgment and declared the ordinance valid. SID 196 appeals. We affirm the district court's order granting Valley's motion for summary judgment.

## BACKGROUND

Valley is a city of the second class, located between Omaha and Fremont, Nebraska. On November 9, 2010, the Valley City Council passed three different ordinances to annex three different areas near Valley. Ordinance No. 611, the subject of this litigation, authorized, pursuant to Neb. Rev. Stat. § 17-405.01 (Reissue 2012), the annexation of land near Valley. This annexed land is labeled annexation "Area A" on the map we have attached as appendix A to our opinion, which map is a portion of an exhibit. Annexation area A consists of six different parcels: A1 through A6. SID 196 is located in area A1. The legal description in ordinance No. 611 describes annexation area A as a whole, and does not individually describe the parcels which make up area A.

*Area A1—Ginger Cove.*

Area A1 consists of SID 196 and is commonly known as the Ginger Cove subdivision. The area is an almost completely developed residential area with 155 residential homes

surrounding a sandpit lake. At the time of the proposed annexation, it did not share any common borders with Valley, but did share common borders with areas A2 and A3.

*Area A2—Ginger Woods.*

Area A2 consists of sanitary and improvement district No. 254 and is commonly known as the Ginger Woods subdivision. This area is also an almost completely developed residential area with 65 homes surrounding a sandpit lake. In 2010, it did not share any common borders with Valley, but did share common borders with areas A1 and A3.

*Area A3—Plant Site 11.*

Area A3 consists of a sandpit lake and surrounding area owned by Lyman-Richey Corporation (Lyman-Richey). Lyman-Richey refers to the area as "Plant Site 11." This area was used as a gravel and sand mine for approximately 50 years, until operations were substantially completed in 2007. It shares a common border with Valley, along with areas A1, A2, A4, and A5. In his deposition, Patrick Gorup, vice president of Lyman-Richey and its parent company, stated that plant site 11 was mined out under current market conditions and that Lyman-Richey had plans to potentially develop the area into a residential property or sell the property. At the time of the summary judgment, there was no residential development on plant site 11.

*Area A4—Plant Site 7.*

Area A4 is also owned by Lyman-Richey and consists of a currently operating gravel and sand mine. This area is east of area A3 and shares a common border with Valley, along with areas A3 and A5. Lyman-Richey expects that mining operations on this site will continue for at least another 7 to 10 years, depending on market conditions. Gorup stated that Lyman-Richey is conducting mining operations on the site in a manner that will better accommodate residential development after mining is completed. Land within the area not used in mining operations is leased to a farmer.

*Area A5—McCann's Lake.*

Area A5 consists of a private lake with two residences on it. This area borders areas A3 and A4. In 2010, it did not share a border with Valley.

*Area A6.*

This area, which is not labeled on the attached map, primarily consists of seven different individual acreages and makes up the rest of annexation area A.

*Ordinance No. 611.*

In 2006, Valley, SID 196, and Lyman-Richey entered into an interlocal agreement regarding wastewater and sewer services. Under the agreement, SID 196 and Lyman-Richey agreed to pay Valley for the cost to construct a lift station and a force main for the purpose of routing wastewater from SID 196 and the Lyman-Richey properties to the regional pumping station in Valley. According to Gorup, Lyman-Richey and SID 196 split the cost of the system. Lyman-Richey reserved the capacity for 233 residential lots to use the wastewater system on plant site 11, with the option to expand capacity for an additional fee. Gorup stated that they did this because Lyman-Richey was contemplating developing plant site 11 into a residential community.

In its annexation plan, Valley explains that it borrowed $4.5 million from the Nebraska Department of Environmental Quality to construct two regional pumping stations and a force main to transport wastewater in Valley to the treatment facility in Fremont. To finance repayment of the loan, Valley charges its residents a fee for use of the sewer system. Valley charges residents in Ginger Cove and Ginger Woods a monthly fee to use the system, which is substantially the same as what is charged to residents of Valley. The fee charged to the users of the sewer system is less than the cost to repay the loan. The balance of the debt is repaid using revenue from Valley's sales tax.

Before the ordinance passed, police services were provided to annexation area A by the Douglas County Sheriff, with the Valley Police Department as a secondary responder. After the

annexation, police services would primarily be handled by the Valley Police Department. Fire and paramedic services were provided by the Valley Suburban Fire and Rescue Department and would continue to be provided by that department after the annexation. Snow removal services were provided by Douglas County and upon annexation would be provided by Valley. Valley was already providing all building inspection and building code enforcement within the area.

After the ordinance passed, SID 196 filed a complaint in Douglas County District Court seeking to have the ordinance be declared invalid and seeking to enjoin Valley from enforcing the ordinance. No other residents or entities within the proposed annexation area challenged the ordinances. As stated earlier, at the same time, Valley also annexed two other areas near the city. Those annexations have not been challenged and are not at issue in this litigation.

On January 9, 2013, Valley filed a motion for summary judgment. Both parties presented evidence from expert witnesses. Essentially, the experts chiefly differed in their ultimate conclusions regarding the classification of the land and which facts they used to arrive at those conclusions. There does not appear to be any dispute, however, over the use or physical nature of any of the particular parcels within annexation area A or the immediate surrounding area.

Valley's expert came to the conclusion that all of the land within annexation area A is urban or suburban. He stated that he looked at the entire character of the area and surrounding properties in arriving at his conclusion. SID 196's expert stated that "the Lyman-Richey property is not annexable because it is undeveloped and rural in character, and thus, SID 196 is not annexable because it would not be contiguous with the existing corporate limits of the city." In a deposition, he stated that he would classify SID 196 as "rural residential."

On September 9, 2013, the district court granted Valley's motion for summary judgment and declared the ordinance valid. Issuing its opinion from the bench, the district court found that area A was contiguous with or adjacent to Valley because it shares a common border with Valley. Further, the

court determined that the area should be classified as urban or suburban because of the presence of the Ginger Cove and Ginger Woods subdivisions and the fact that the area's value as a residential area would exceed its value as an agricultural area. SID 196 filed an appeal on October 9.

## ASSIGNMENTS OF ERROR

SID 196 assigns, consolidated and restated, that the trial court erred in (1) failing to find that there was a genuine issue of material fact, (2) finding that the property named in ordinance No. 611 was urban or suburban in character, (3) finding that the property named in ordinance No. 611 met the contiguous or adjacent requirement, and (4) failing to find that the annexation was solely motivated by increasing tax revenues.

## STANDARD OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives the party the benefit of all reasonable inferences deducible from the evidence.[1]

[2,3] An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity.[2] On appeal from an equity action, we decide factual questions de novo on the record and, as to questions of both fact and law, are obligated to reach a conclusion independent of the trial court's determination.[3]

## ANALYSIS

[4,5] Section 17-405.01 provides that cities of the second class may annex contiguous or adjacent lands which are urban or suburban in character and not agricultural lands which are rural in character.[4]

---

[1] *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

[2] *County of Sarpy v. City of Gretna*, 273 Neb. 92, 727 N.W.2d 690 (2007).

[3] *Id.*

[4] See *Holden v. City of Tecumseh*, 188 Neb. 117, 195 N.W.2d 225 (1972).

The power delegated to municipal corporations to annex territory must be exercised in strict accord with the statute conferring such power, because a municipal corporation has no power to extend or change its boundaries other than as provided by constitutional enactment or as it is empowered by the Legislature by statute to do.[5]

SID 196 challenges the validity of ordinance No. 611 on several grounds. SID 196 alleges that (1) some land within annexation area A is not urban or suburban in character; (2) area A1, the parcel SID 196 is located on, fails to meet the contiguous or adjacent requirement; and (3) annexation area A was annexed for an improper purpose. First, we must address whether there existed a material issue of fact to make summary judgment improper.

*Summary Judgment.*

[6-8] SID 196 assigns that the trial court erred in granting Valley's motion for summary judgment because the conflicting expert testimony created a genuine material issue of fact. A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that if the evidence presented for summary judgment remains uncontroverted, the moving party is entitled to judgment as a matter of law.[6] After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party.[7] A summary judgment involves a judicial evaluation of evidence to determine whether an issue of material fact exists

---

[5] *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 491, 536 N.W.2d 56, 62 (1995), *disapproved on other grounds, Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004).

[6] See *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014).

[7] *SID No. 57 v. City of Elkhorn, supra* note 5.

and, therefore, is a factual determination resulting in a disposition of the factual merits of a controversy.[8]

[9] According to SID 196, the conflicting testimony between the parties' experts created a factual issue regarding the character of the Lyman-Richey property. SID 196 also argues that statements made in a report authored by Valley's expert in 2007, concerning the characterization of annexation area A, conflict with statements later made by that same expert at a deposition. A conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment.[9] The key element of the rule is whether the experts conflict on a question of fact or a question of law. Two experts coming to different legal conclusions on the same issue does not create a material issue of fact.[10]

There is no disagreement between the parties and their experts over the physical nature of the land or what is contained on each parcel within annexation area A. There is no dispute that there are ongoing mining operations at plant site 7, no dispute over the state of plant site 11 at the time of the ordinance, and no dispute over the number of residences on the other properties within the area. The experts in this case simply emphasized different facts in coming to their conclusions about how the land should be classified under the statute.

The issue of whether the character of the land to be annexed meets the legal standard proscribed in the statute is a question of law. Although the characterization of the land depends on the particular facts of each case, "the question of whether the facts fulfill a particular legal standard" presents a question of law.[11] The fact that the experts came to two different legal conclusions, based upon the same set of facts, does not create

---

[8] *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993).

[9] *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013).

[10] See *id*.

[11] 5 C.J.S. *Appeal and Error* § 818 at 77 (2007) (citing *State v. Trudeau*, 139 Wis. 2d 91, 408 N.W.2d 337 (1987)).

a material issue of fact and does not defeat Valley's motion for summary judgment. SID 196's assignment of error that the conflicting expert testimony created a material issue of fact is without merit.

*Characterization of Annexation Area A.*

[10] SID 196 assigns that the trial court erred in finding that the two properties owned by Lyman-Richey and located within annexation area A were urban or suburban in character. Section 17-405.01 expressly limits a city of the second class from exercising its annexation power "over any agricultural lands which are rural in character." Rural is defined as "of or pertaining to the country as distinguished from a city or town," and urban is defined as "of or belonging to a city or town."[12]

Gorup's deposition testimony indicated that Lyman-Richey contemplated future residential development on both sites before the ordinance was passed. SID 196 argues that the parcels should not be classified as urban or suburban, because the primary use of the property at the time of annexation was Lyman-Richey's mining operations, which it contends is an agricultural use of the property. SID 196 also argues that both of the Lyman-Richey parcels are zoned as transitional agriculture and that at the time of summary judgment, there had been no residential development on either Lyman-Richey property. SID 196 believes that the possible future use of the property cannot be used as a justification for classifying the property as urban or suburban.

[11] Land need not already be zoned and developed into a nonagricultural use, however, before it can be annexed. We have stated that such a construction of the statute "would seriously impair intelligent planning and coordination of the change-over in the use of land for urban purposes."[13] The test is "whether a city has arbitrarily and irrationally used the power granted therein to include lands entirely disconnected,

---

[12] *Wagner v. City of Omaha*, 156 Neb. 163, 168, 55 N.W.2d 490, 494 (1952).

[13] *Voss v. City of Grand Island*, 186 Neb. 232, 237, 182 N.W.2d 427, 430 (1970).

agricultural in character, and bearing no rational relation to the legitimate purposes of annexation."[14]

The land in question, at the time of annexation, did bear a "rational relation to the legitimate purposes of annexation." Lyman-Richey's actions prior to the passage of ordinance No. 611 indicated that the two mining sites would eventually be used for residential development. In 2007, Lyman-Richey made a request for proposals to several developers in the region to explore development opportunities on plant site 11. Additionally, Lyman-Richey financed part of the regional pumping station in order to reserve capacity for over 200 residential lots on plant site 11. Gorup also indicated that Lyman-Richey was mining plant site 7 in a manner that would make conditions on the property more favorable for future residential development after mining operations at the site are completed.

[12] We also do not find that the parcels used for mining gravel and sand qualify as agricultural land under § 17-405.01. We have previously defined agriculture as "'the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock.'"[15] Neb. Rev. Stat. § 77-1363 (Cum. Supp. 2014), which defines agricultural land for tax purposes, states that agricultural land includes, but is not limited to, "irrigated cropland, dryland cropland, grassland, wasteland, nurseries, feedlots, and orchards." A regulation interpreting that statute defines land used for an agricultural purpose as land that is "used for the commercial production of any plant or animal product in a raw or unprocessed state that is derived from the science and art of agriculture, aquaculture, or horticulture."[16]

Under Nebraska law, mining operations have traditionally never fallen under the definition of an agricultural use of land. There is also no indication that the mining operations on either of the Lyman-Richey properties were used to further an

---

[14] *Id*. at 237-38, 182 N.W.2d at 430.

[15] *Wagner v. City of Omaha, supra* note 12, 156 Neb. at 168, 55 N.W.2d at 494 (quoting 3 C.J.S. *Agriculture* § 1 (1936)).

[16] 350 Neb. Admin. Code, ch. 11, 002.08 (2014).

agricultural purpose, such as the creation of a pond to irrigate crops.[17] The mining operations were and are solely for the purpose of selling the gravel and sand that Lyman-Richey mined. The mining operations in no way involve the "production of any plant or animal product."[18] And while the record indicates that Lyman-Richey's practice was to rent out to farmers portions of the yet-to-be-mined land within the two plant sites, any farming that may take place on the land is merely incidental to the overall mining operations.[19]

There is no merit to SID 196's assignment of error that the Lyman-Richey properties should be classified agricultural land that is rural in character.

*Contiguous or Adjacent Requirement.*

SID 196 assigns that the trial court erred in finding that SID 196 was contiguous with or adjacent to Valley. SID 196 has a common connection with plant site 7, plant site 11, and McCann's Lake. At the time the ordinance passed in 2010, plant site 7, plant site 11, and McCann's Lake shared a common border with Valley.

[13-16] "The 'contiguous or adjacent' requirement in statutes governing the annexation powers of cities determines how substantial the link between the city and the annexed area must be."[20] "The terms are used synonymously and interchangeably, and if the territory sought to be annexed is not contiguous to the municipality, the proceedings are without legal effect."[21] "Contiguity means that the two connecting boundaries should be substantially adjacent."[22] "Substantial adjacency between a municipality and annexed territory exists when a substantial

---

[17] See *Co. of Kendall v. Nat'l Bk. Trust No. 1107*, 170 Ill. App. 3d 212, 524 N.E.2d 262, 120 Ill. Dec. 497 (1988).

[18] 350 Neb. Admin. Code, *supra* note 16.

[19] See *Sullivan v. City of Omaha*, 183 Neb. 511, 162 N.W.2d 227 (1968).

[20] *County of Sarpy v. City of Gretna, supra* note 2, 273 Neb. at 96, 727 N.W.2d at 694.

[21] *Id.*

[22] *Id.*

part of the municipality's boundary is adjacent to a segment of the boundary of the city or village."[23]

[17] At the time the suit was filed, SID 196, by itself, did not share a common border with Valley. Generally, a municipality may annex several tracts as long as one tract is substantially adjacent to the municipality and the other tracts are substantially adjacent to each other.[24] SID 196 argues that the annexation of plant site 7, plant site 11, and McCann's Lake are in effect a "'strip annexation'" designed to satisfy the contiguous or adjacent requirement under the statute for SID 196.[25] We have consistently held that cities are not permitted to annex a strip or corridor of land in order to reach a larger area of land that is not itself contiguous with or adjacent to the annexing city.[26] SID 196 argues that the strip annexation cases are analogous to the case at bar, because SID 196 and Valley do not share a "community of interest." According to SID 196, citing its expert, "'community of interest' implies that one area is dependent on the other for its existence or that there is commonality in the needs and desires of the citizens of each."[27]

The "strip annexation" cases primarily focus on the extent to which the city shared a border with the land to be annexed. In *Johnson v. City of Hastings*,[28] the city wished to annex a community college campus that was three-quarters of a mile outside the city limits. To meet the contiguous or adjacent requirement, the city also annexed a 120-foot strip of highway and right-of-way leading to the campus. We held that "[t]he requirement of contiguity has not been achieved in this case, since the boundary of the area sought to be annexed is

---

[23] *Id*.

[24] *County of Sarpy v. City of Papillion*, 277 Neb. 829, 765 N.W.2d 456 (2009); *City of Elkhorn v. City of Omaha*, 272 Neb. 867, 725 N.W.2d 792 (2007).

[25] Brief for appellant at 34.

[26] See, e.g., cases cited *supra* note 24.

[27] Brief for appellant at 36.

[28] *Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20 (1992).

not substantially adjacent to the boundary of the city."[29] Our "strip annexation" cases all hinge on the lack of substantial adjacency to the existing city border. In *County of Sarpy v. City of Gretna*,[30] we explained how "[t]he invalidity of a strip annexation is not based upon the existence of a larger tract at the distal end of the strip, but, rather, upon the lack of substantial adjacency where the proximal end meets the corporate limits of the city." Similarly, in *County of Sarpy v. City of Papillion*,[31] it was not the shape of the tract to be annexed that was controlling, but "lack of substantial adjacency" to an existing corporate boundary which precluded annexation. The nature of the land within the "strip" has never factored into the analysis.

SID 196 is seeking to extend the rule in those cases, where a municipality is seeking to annex a narrow corridor of land in order to connect a larger community farther away from the city, to a case such as this where Valley is seeking to annex a larger portion of undeveloped land that borders a large part of the existing corporate boundary of Valley. There is no authority, in either the statutes or our case law interpreting those statutes, to support the notion that annexations must meet a "community of interest" requirement. When addressing the validity of an annexation, we have never sought to compare the land to be annexed with the annexing city or examined whether one community depended on the other.

[18] Whether the annexation is ill advised is a question for the legislative body that authorizes the annexation. "The annexation of land to cities and towns is a legislative function, and it is for their governing bodies to determine the facts which authorize the exercise of the power granted."[32] The scope of inquiry for the courts is limited to "whether the conditions

---

[29] *Id*. at 297, 488 N.W.2d at 24.

[30] *County of Sarpy v. City of Gretna, supra* note 2, 273 Neb. at 98, 727 N.W.2d at 695.

[31] *County of Sarpy v. City of Papillion, supra* note 24, 277 Neb. at 839, 765 N.W.2d at 465.

[32] *SID No. 57 v. City of Elkhorn, supra* note 5, 248 Neb. at 491, 536 N.W.2d at 62.

exist which authorize the annexation thereof."[33] Annexation area A, as a whole, met the contiguous or adjacent requirement in § 17-405.01. The significant shared border between annexation area A and the existing corporate boundary of Valley constituted substantial adjacency. Therefore, at the time the ordinance was passed, SID 196 was contiguous with or adjacent to Valley because it was within annexation area A. SID 196's assignment of error that SID 196 is not contiguous with or adjacent to Valley is without merit.

*Purpose of Annexation.*

[19,20] SID 196 assigns that the district court erred in not finding that the annexation was for an improper purpose. It is improper for an annexation to be solely motivated by an increase in tax revenue.[34] "The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity."[35] The burden is not on Valley to prove that it did not annex the land for tax revenues, but instead rests with SID 196 to prove that Valley was motivated by an impermissible purpose.

In *Swedlund v. City of Hastings*,[36] the city's planning consultant stated that the city took revenue issues into consideration because "it would be fiscally irresponsible of the City" not to consider whether it could fund the additional services required. We determined that the landowners failed to meet their burden to show that the annexation was "enacted primarily or solely for the purpose of raising revenue for the City."[37]

SID 196's argument rests on allegations that Valley was motivated to annex SID 196 because of SID 196's extremely low debt. SID 196 points out that Valley chose not to annex

---

[33] *Sullivan v. City of Omaha, supra* note 19, 183 Neb. at 514, 162 N.W.2d at 229.

[34] See *Witham v. City of Lincoln*, 125 Neb. 366, 250 N.W. 247 (1933).

[35] *Swedlund v. City of Hastings*, 243 Neb. 607, 614, 501 N.W.2d 302, 307 (1993).

[36] *Id.*

[37] *Id.* at 615, 501 N.W.2d at 308.

another sanitary and improvement district because of its much higher level of debt. SID 196 has alleged only that Valley took into account the relative financial health of the sanitary and improvement districts it considered annexing, not that it ever considered increasing its tax base. As in *Swedlund*, it would be "fiscally irresponsible" for Valley to not at least take into consideration the debt load of the areas it was annexing. Furthermore, the debt level of a sanitary and improvement district has no relation to the increase in tax revenue the city stands to gain from an annexation. The fact Valley compared the debt of several different districts does not create an inference that Valley's sole motivation was an increase in its tax revenue.

The record on appeal indicates that Valley was motivated to annex SID 196, at least in part, to equalize the burden on both the residents of Valley and SID 196 in financing the recent improvements to the sewer system that serves the region. Currently, the residents of Valley are effectively partially subsidizing SID 196's use of the sewer system through Valley's sales tax. Valley does not have to allow its citizens to pay a bigger share of the cost of the sewer system improvements when the system is used by residents of both Valley and SID 196. Even though there is a connection to tax revenue, SID 196 has not met its burden in proving that Valley was motivated to annex the area solely for the purpose of increasing tax revenue. SID 196's assignment of error is without merit.

## CONCLUSION

Accordingly, we find that ordinance No. 611 is valid and that the trial court properly granted summary judgment. We affirm.

AFFIRMED.

WRIGHT, J., not participating.

(*See page 17 for appendix A.*)



APPENDIX A