CORNHUSKER PUBLIC POWER DISTRICT, A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE, V. CITY OF SCHUYLER, NEBRASKA, A MUNICIPAL CORPORATION AND CITY OF THE FIRST CLASS OF THE STATE OF NEBRASKA, APPELLANT.

699 N.W.2d 352

Filed June 17, 2005.   No. S-04-367.

Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellant.

Thomas M. Maul, of Law Office of Thomas M. Maul, for appellee.

Steven G. Seglin, of Crosby Guenzel, L.L.P., for amicus curiae Nebraska Rural Electric Association.

Gary G. Krumland and Mary E. Sommermeyer for amicus curiae League of Nebraska Municipalities.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## NATURE OF CASE

Nebraska law allows cities of the first class to annex "contiguous or adjacent lands, lots, tracts, streets, or highways." Neb. Rev. Stat. § 16-117(1) (Reissue 1997). Cornhusker Public Power District (Cornhusker) challenged in the district court for Colfax County the City of Schuyler's attempted annexation of certain tracts of land. The court ruled in favor of Cornhusker and enjoined Schuyler from enforcing its ordinance annexing such tracts of land. Schuyler appeals. The primary issue presented is whether

the tracts of land Schuyler attempted to annex are "contiguous or adjacent" to its existing corporate limits. We conclude that they are not and therefore affirm the judgment of the district court.

## BACKGROUND

On September 2, 2003, Schuyler enacted ordinance No. 979. The ordinance defined two separate tracts of land to be annexed. For the reader's assistance, we include a sketch for illustrative purposes that is not drawn to scale in which the annexed tracts of land are shaded.

The first is a tract 30 feet wide and 4,379 feet long, consisting of approximately 3 acres. It begins on the south side of U.S. Highway 30, adjacent to the west edge of Schuyler's corporate limits, extends south to the railroad tracks, and then west to County Road 9. It lies along the eastern and southern edges of property owned by Excel Corporation (Excel).

Excel's property lies to the immediate west of Schuyler's corporate limits. Prior to August 28, 2003, all of Excel's property, including the first tract of annexed land, was designated as a

county industrial area. See Neb. Rev. Stat. §§ 13-1111 to 13-1121 (Reissue 1997). On that date, with Excel's consent, the Colfax County Board of Commissioners excluded the first tract of land (30 feet by 4,379 feet) from the county industrial area. See, generally, § 13-1119. The remainder of Excel's property is still designated as a county industrial area. Land designated as a county industrial area cannot be annexed by a city of the first class, with some exceptions. See § 13-1115.

The second tract of land takes the general shape of a flag and flagpole. It begins at the 30-foot-wide western edge of the first tract of land on County Road 9. The "flagpole" extends south 149 feet to the railroad tracks and north 1,939 feet to Highway 30 and, for much of the distance, is 37.5 feet wide. However, near Highway 30, the "flag" bulges westward to include approximately 26 acres of land, which is owned by Nor-Am Properties, L.L.C. (Nor-Am). Cornhusker and Schuyler stipulated that both tracts of annexed land are urban or suburban in character and are not part of a county industrial area. Nor-Am's property, Excel's property, and the property to the east of Excel's property are all zoned by Schuyler for industrial use.

Excel operates a meatpacking plant on its property. Nor-Am was expected to operate a refrigeration facility on its property, which was scheduled to open in December 2003. The two facilities are physically connected by a 10-foot-diameter tube that travels over County Road 9. The tube contains a conveyor belt and allows Excel to transport its products directly into the Nor-Am facility for refrigeration and storage.

Nor-Am and Excel consented to Schuyler's annexation of tracts 1 and 2. In fact, the annexation was initiated at the request of Nor-Am. Nor-Am's primary motive for requesting the annexation was to receive electrical power from Schuyler. The Excel property currently receives electrical power from Schuyler, while Nor-Am's facility lies within Cornhusker's service territory. Because the two facilities were linked by the conveyor belt, Nor-Am was concerned that if one facility, but not the other, were to lose power, it could result in considerable disruption to each business. If the annexation is valid, Schuyler could obtain the right to provide electrical power to the Nor-Am facility. See Neb. Rev. Stat. § 70-1008 (Reissue 2003).

Cornhusker filed a complaint in district court on September 16, 2003. It sought an order enjoining Schuyler from enforcing its annexation ordinance and declaring the ordinance null and void. After a trial, the district court concluded that the ordinance was invalid because:

> The annexation is not unified with, compact with, or contiguous to, the City of Schuyler. The boundary of the area sought to be annexed is not substantially adjacent to the City of Schuyler. The strip itself does not add to the development of the territory. Its only purpose is to reach out and grab the Nor-Am property. This is exactly the type of annexation which was disapproved in [*Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20 (1992)].

The district court enjoined Schuyler from enforcing the ordinance, prompting Schuyler's appeal. We moved the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Schuyler assigns, rephrased and consolidated, that the district court erred in (1) determining that Cornhusker had standing to challenge the enforcement of the ordinance and (2) finding that the ordinance was invalid because the lands annexed were not contiguous and adjacent and in enjoining Schuyler from enforcing it.

## STANDARD OF REVIEW

An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity. *Swedlund v. City of Hastings*, 243 Neb. 607, 501 N.W.2d 302 (1993). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Detter v. Miracle Hills Animal Hosp., ante* p. 164, 691 N.W.2d 107 (2005).

## ANALYSIS

### STANDING

First, we address Schuyler's argument that Cornhusker does not have standing to challenge the ordinance. The applicable rules of law are well known. Standing is the legal or equitable

right, title, or interest in the subject matter of the controversy. *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004). Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Id.* Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Id.*

The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.* In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Id.* The litigant must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.*

We recently traced the development of the law with respect to a party's standing to challenge an annexation of territory in *County of Sarpy v. City of Gretna, supra*. Currently, to establish standing to challenge an annexation, a party must show (1) a personal, pecuniary, and legal interest that has been affected by the annexation and (2) the existence of an injury to that interest that is personal in nature. *Id.* As we mentioned in *County of Sarpy*, this list of enumerated parties is not exclusive. It is undisputed that Schuyler is attempting to annex property lying within Cornhusker's service territory. In addition, the general manager of Cornhusker testified that providing electrical power to the Nor-Am facility would produce approximately $300,000 in annual revenue for Cornhusker. However, if the annexation were valid, Schuyler could obtain the right to provide electrical power to the Nor-Am facility. See § 70-1008(2) ("municipally owned electric system, serving such municipality at retail, shall have the right, upon application to and approval by the [Nebraska Power Review Board], to serve newly annexed areas of such municipality"). In *Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20 (1992), the annexation, and subsequent removal, of property within the service territory of a public power district was sufficient to convey standing on the power district to challenge the annexation. See *id.* at 301, 488 N.W.2d at 26 ("[t]his fact alone

indicates that [the rural public power district] has a personal, pecuniary, and legal interest which is adversely affected by the annexation"). Schuyler's annexation would remove property, and the revenue produced by it, from Cornhusker's service area. This assignment of error is without merit.

## ANNEXATION

Schuyler is a city of the first class. See Neb. Rev. Stat. § 16-101 (Reissue 1997). A city of the first class "may by ordinance . . . include within the corporate limits of such city any contiguous or adjacent lands, lots, tracts, streets, or highways as are urban or suburban in character and in such direction as may be deemed proper." § 16-117(1). The parties have stipulated that the tracts of land Schuyler purported to annex are urban or suburban in character.

The annexation of land to cities and towns is a legislative function, and it is for their governing bodies to determine the facts which authorize the exercise of the power granted. *Johnson v. City of Hastings, supra.* However, a municipal corporation has no power to extend or change its boundaries otherwise than provided by constitutional enactment or as it is empowered by the Legislature by statute to do. *Id.* The power delegated to municipal corporations to annex territory must be exercised in strict accord with the statute conferring it. *Id.* The power of a municipality to annex territory is, under the specific provisions of § 16-117, limited to annexing contiguous or adjacent land if it is urban or suburban in character, and not agricultural land that is rural in character. *Johnson v. City of Hastings, supra.* The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity. *Id.*

The issue in this case is whether the tracts of land Schuyler seeks to annex are contiguous or adjacent to its existing corporate limits. The terms "contiguous" and "adjacent" are used synonymously and interchangeably, and if the territory sought to be annexed is not contiguous to the municipality, the proceedings are without legal effect. *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995), *disapproved on other grounds, Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004).

See, also, *Swedlund v. City of Hastings*, 243 Neb. 607, 501 N.W.2d 302 (1993); *Johnson v. City of Hastings, supra*; *Village of Niobrara v. Tichy*, 158 Neb. 517, 63 N.W.2d 867 (1954). This court has held that " 'contiguity means that the two connecting boundaries should be *substantially* adjacent.' " *Swedlund v. City of Hastings*, 243 Neb. at 611, 501 N.W.2d at 305. " 'Substantial adjacency' exists when ' " '*a substantial part of the boundary thereof is adjacent to a segment of the boundary of the city or village*. Adjacent . . . means contiguous or coexistent with.' " ' " *Id.* at 611, 501 N.W.2d at 305.

An annexation of land joined to a city only by a narrow stem of land is sometimes referred to as a "strip" or "corridor" annexation. A strip or corridor annexation similar to what occurred in this case was at issue in *Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20 (1992). The City of Hastings, a city of the first class, attempted to annex the Central Community College campus, which was located approximately three-quarters of a mile east of Hastings' corporate limits. To reach the campus, Hastings annexed a 120-foot-wide strip of U.S. Highway 6 and the highway's right-of-way. This court held that Hastings' attempted annexation was void because the annexed land was not contiguous or adjacent to Hastings' corporate limits:

> [I]n this case, the City of Hastings is reaching out like a finger, along Highway 6, a 120-foot-wide strip, to the college campus. . . .
>
> We hold that as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation. . . . The requirement of contiguity has not been achieved in this case, since the boundary of the area sought to be annexed is not substantially adjacent to the boundary of the city.

(Citations omitted.) *Johnson v. City of Hastings*, 241 Neb. at 297, 488 N.W.2d at 24. Cf. *Witham v. City of Lincoln*, 125 Neb. 366, 250 N.W. 247 (1933).

Schuyler's attempted annexation does not comply with § 16-117. The boundary of the land sought to be annexed is not "substantially adjacent" to Schuyler's existing corporate limits. See *Swedlund v. City of Hastings, supra*. Therefore, the territory sought to be annexed is not contiguous to the municipality within

the meaning of § 16-117. We conclude, therefore, that Schuyler's annexation ordinance is null and void.

In support of its contention that its annexation is valid, Schuyler attempts to distinguish *Johnson* because "in Johnson the 'strip' passed through an agricultural area which specifically by statute cannot be annexed." Brief for appellant at 14. In a related argument, Schuyler contends that because all the land from its western corporate limits to Nor-Am's property is zoned for industrial use, the homogeneity of the character of the land achieves the purpose of § 16-117. We reject those arguments. The *Johnson* court expressly declined to decide whether the strip passed through urban or rural land. *Johnson* was decided solely on the basis of the "contiguous or adjacent" requirement of § 16-117, which requires substantial adjacency between the boundary of the area sought to be annexed and the boundary of the city, without contemplation of the character or use of any intervening property.

To validate its annexation, Schuyler also relies on dicta in *Johnson*, where the court said: "[T]he record does not give us enough facts to decide whether § 13-1115 precluded the annexation of the area adjacent to Highway 6, which, if it did, could provide an excuse for the strip annexation in this case." *Johnson v. City of Hastings*, 241 Neb. at 299, 488 N.W.2d at 25. Citing that statement, Schuyler suggests that if the presence of a county industrial area prevented a city from annexing contiguous land, then a strip or corridor annexation could be permitted to reach around the county industrial area. County industrial areas are governed by §§ 13-1111 to 13-1121. Section 13-1115 generally prevents a city of the first class from annexing a county industrial area.

We decline to elevate the dicta in *Johnson* to the status of law. Section 16-117 requires that annexed land be contiguous or adjacent to a city's corporate limits; it does not provide an exception to that requirement if a city's growth is boxed in by a county industrial area, unless one of the conditions set forth in § 13-1115 is met. That is not the case here.

## CONCLUSION
The judgment of the district court is affirmed.

AFFIRMED.