Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/20/2021 09:14 AM CDT

Darling Ingredients Inc., formerly known as
Darling International Inc., and Darling
National LLC, appellees, v. City of
Bellevue, a Nebraska municipal
corporation, appellant.

Frank R. Krejci, Trustee of the Frank R. Krejci
Revocable Trust, appellee, v. City of
Bellevue, a Nebraska municipal
corporation, appellant.

___ N.W.2d ___

Filed May 28, 2021.    Nos. S-20-405, S-20-406.

1. **Annexation: Ordinances: Equity.** An action to determine the validity
   of an annexation ordinance and enjoin its enforcement sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appel-
   late court decides factual questions de novo on the record and, as to
   questions of both fact and law, is obligated to reach a conclusion inde-
   pendent of the trial court's determination.
3. **Annexation: Statutes.** The issue of whether the character of the land to
   be annexed meets the legal standard prescribed in the statute is a ques-
   tion of law. Although the characterization of the land depends on the
   particular facts of each case, the question of whether the facts fulfill a
   particular legal standard presents a question of law.
4. **Municipal Corporations: Annexation: Statutes.** The power delegated
   to municipal corporations to annex territory must be exercised in strict
   accord with the statute conferring it.
5. **Annexation: Taxation.** It is improper for an annexation to be solely
   motivated by an increase in tax revenue.
6. **Annexation: Ordinances: Proof.** The burden is on one who attacks an
   annexation ordinance, valid on its face and enacted under lawful author-
   ity, to prove facts to establish its invalidity.

7. **Annexation: Words and Phrases.** The use of land for agricultural purposes does not necessarily mean it is rural in character. It is the nature of its location as well as its use which determines whether it is rural or urban in character.

8. **Municipal Corporations: Annexation.** To determine whether lands are urban or suburban, or rural, the test is whether a city has arbitrarily and irrationally used the power granted therein to include lands entirely disconnected, agricultural in character, and bearing no rational relation to the legitimate purposes of annexation.

9. **Annexation: Words and Phrases.** The terms "contiguous" and "adjacent" mean adjoining, touching, and sharing a common border.

10. **Municipal Corporations: Annexation.** A municipality may annex several tracts as long as one tract is substantially adjacent to the municipality and the other tracts are substantially adjacent to each other.

Appeals from the District Court for Sarpy County: Nathan B. Cox, Judge. Reversed and remanded for further proceedings.

A. Bree Robbins, Bellevue City Attorney, for appellant.

Michael S. Degan, of Kutak Rock, L.L.P., for appellee Darling Ingredients Inc.

James E. Lang, of Lang Law, L.L.C., for appellee Frank R. Krejci.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

After the City of Bellevue (the City) adopted an ordinance to annex their land, landowners brought actions in the district court and obtained orders finding that the City lacked the authority to annex the land and enjoining it from doing so. The district court found the City lacked authority because the land in question was rural and agricultural rather than urban or suburban and because it was not contiguous and adjacent to the City's existing boundaries. The district court did not address the landowners' argument that the annexation was not lawful because it was motivated by an improper purpose.

In these consolidated appeals of the district court's orders, we find that the district court erred by finding the annexation invalid for the reasons it identified. We therefore reverse, and remand for further proceedings so that the district court may consider the landowners' improper purpose challenge.

## BACKGROUND

*Procedural Background.*

In 2019, the City adopted ordinances that provided for the annexation of various areas. One of the ordinances annexed a portion of land referred to as "Area #9." Area #9 consisted of properties owned by Darling Ingredients Inc. and Darling National LLC (collectively Darling), and Frank R. Krejci, trustee of the Frank R. Krejci Revocable Trust (Krejci).

Darling and Krejci filed separate complaints in the district court for Sarpy County, naming the City as a defendant. They asserted that the City had exceeded the authority and powers granted to a city of the first class by Neb. Rev. Stat. § 16-130 (Cum. Supp. 2020). They claimed that the City lacked authority under § 16-130, because the land in question was not adjacent to or contiguous with the existing City limits and was agricultural and rural in character rather than urban or suburban. Darling and Krejci also claimed that the ordinance was invalid because it was enacted for an improper purpose. Both Darling and Krejci asked the district court to declare the ordinance invalid and to permanently enjoin the City from taking actions to enforce it. The two actions were consolidated for discovery and trial.

*Evidence at Trial.*

The parties did not call any witnesses at trial. Instead, they offered a number of affidavits and other documentary evidence as exhibits. The district court received all of these exhibits as evidence, most without objection. A summary of the evidence received by the district court is provided in the paragraphs below.

In 2019, the City considered an annexation package made up of several sanitary and improvement districts and unincorporated parcels of land in its extraterritorial jurisdiction, including Area #9.

The City's planning director prepared a memorandum for city officials about Area #9 and several other unincorporated areas. The memorandum concluded with two different recommendations. The City's planning department recommended approval of the annexation based on the positive financial impact on the City and its natural growth and development. The City's planning commission, however, recommended approving the annexation proposal with the exception of some parcels designated with "greenbelt" tax valuation status, including portions of Area #9. See Neb. Rev. Stat. § 77-1344 (Reissue 2018). Rather than excluding all greenbelt lots, the City's planning commission recommended annexing greenbelt lots that did not appear to be used for agricultural purposes.

Following public hearings, the city council voted unanimously to adopt the ordinance that annexed Area #9. Around the same time and while this matter was pending in district court, the City annexed several other unincorporated areas and sanitary and improvement districts. The City planned to provide services to all annexed areas and assess future infrastructure needs.

The following map was attached to the ordinance that annexed Area #9. Area #9 is shaded in blue and located below the center line. Areas have been labeled by this court for clarity.

The northwestern portion of Area #9 is a 55-acre strip owned by Krejci; it comprises the majority of the western border of Area #9. The Krejci property has been used exclusively for raising crops since before 2011. It contains no structures or buildings; does not have City water, sewer, or gas service; and has no residents. Although the entire Krejci property has greenbelt tax valuation status, record cards from the Sarpy County assessor listed the location of the property as "[s]uburban." In an affidavit, the Sarpy County assessor stated that



his office had determined that Krejci's property was suburban in both location and character.

Frank R. Krejci stated in an affidavit received by the district court that in his opinion as a purchaser, owner, and developer of property in the area over the preceding 50 years, the Krejci property and the adjoining property to the east were rural in nature, agricultural in character, and not urban or suburban, and there were no urban or suburban uses for it. The district court also received a real estate listing of the Krejci property created in 2014 and last updated in June 2019. The listing divided the Krejci property into several "small industrial lots." The proximity to Highway 75—with visibility to 27,000 cars per day—and Offutt Air Force Base (Offutt AFB) were touted, and the City's "Master Plan for Industrial Use" was referenced. The listing included aerial pictures of the surrounding

area that depicted Area #9, Offutt AFB, and nearby developed areas.

Darling owns the remaining portion of Area #9. The Darling property totals approximately 265 acres and includes farmland (Darling farmland), an industrial plant (Darling plant), and a fingerlike strip on the easternmost portion of Area #9. As with the Krejci property, record cards from the Sarpy County assessor listed the location of the property as "[s]uburban," and the Sarpy County assessor stated that his office had determined that the property was suburban in both location and character.

Darling's easternmost property is approximately 20 acres and includes no structures. According to Darling's general plant manager, this portion was not suitable for development because it was partially wooded, was prone to flooding, and was accessible only by driving on the levy next to Papillion Creek. It did not have greenbelt tax valuation status and was zoned industrial.

The Darling farmland covers 220 acres. The Darling manager stated in an affidavit that Darling purchased the Darling farmland in 2011, that it was used exclusively for agriculture at that time, and that Darling has used it exclusively for agriculture by leasing it to a tenant farmer who raises crops there. The Darling manager stated that Darling has no plans to use the Darling farmland for any other purpose. The Darling farmland has never been platted and has no improvements other than those related to agricultural purposes. Since 1995, the Darling farmland has been designated as greenbelt land for tax valuation purposes. Records of the Sarpy County assessor reflect that the Darling farmland was both zoned as and being used for agricultural purposes. No City services were supplied to the Darling farmland.

The Darling plant sits on approximately 45 acres and is located within the generally triangular middle portion of Area #9 depicted in the map above. The area has been used as some form of industrial plant since the 1940's. The Darling plant is an industrial facility that converts animal byproducts

into sustainable food, feed, and fuel ingredients. It does not have greenbelt tax valuation status and is zoned as industrial by the Sarpy County assessor.

The Darling farmland and the Darling plant are served by the "City of Omaha for water and sewer, Encore and Black Hills Energy for gas," and Sarpy County for roads and emergency services. Emergency services are provided by the City's fire department through Sarpy County.

Fort Crook Road borders Area #9 on the west side. Highway 75 is just outside the western edge of Area #9. Papillion Creek borders Area #9 on the east. The area on the other side of Papillion Creek, outlined in black on the map above, was annexed by the City in 2009. The parties agree that at some point that area included a baseball complex. The district court described the baseball complex as "failed," and our record includes a 2017 newspaper article stating that the complex cost $6.5 million to build, but after the complex did not live up to revenue expectations, the City agreed to end its relationship with the entity that had managed it. The article also stated that the City's mayor said that the land was in an area the City had eyed for future growth. As shown on the map above, the area including the baseball complex does not border the rest of the land within the City's boundaries.

Offutt AFB is to the north of both the area of the City, including the baseball complex, and Area #9. According to evidence in the record, Offutt AFB is the home of U.S. Strategic Command and a wing of the U.S. Air Force. It includes a nonpublic airport and about 10,000 military and other federal employees.

Immediately to the south of Area #9 is the Normandy Hills residential subdivision. Several other residential subdivisions are located on the other side of Highway 75 to the west and northwest of Area #9. These subdivisions are within 1 mile of Area #9. Five of these subdivisions were annexed, at least in part, by the same annexation package that annexed Area #9, and one of those annexed parcels includes an elementary school. Evidence was also introduced at trial that in addition to the

Normandy Hills subdivision and Offutt AFB, there was one commercial establishment and six industrial establishments within a 1-mile radius of Area 9, including the Darling plant.

The district court received the affidavits of several City officials. The director of the City's planning department stated that annexation of Area #9 occurred after an annual review and that he "used a high degree of intelligent planning and coordination in reviewing the proposed areas to be annexed [and] thoroughly reviewed all surrounding areas of the City . . . and its future growth and development." Similarly, the City's land use planner stated that Area #9 was annexed, along with others, "to continue the growth and development for the City . . . . The annexations help with fulfilling the continuous growth and cohesiveness of the community, fill gaps within the community, and help[] the [C]ity continue to grow together." She also said that "growth and development of the City . . . continues to expand near the subject properties." The City's land use planner referenced the City's comprehensive plan.

The district court received the comprehensive plan, which was initially created by the City in the early 2000's and updated as late as 2017. It projected that the City's population would increase from under 45,000 in 2000 to over 60,000 by 2030. According to the comprehensive plan, the projected population growth would require the City to double the amount of land it occupied. The comprehensive plan encouraged the City to monitor "future-growth" areas and be prepared to annex land before it was developed. Referring to the general area in which Area #9 was located, the comprehensive plan stated, "[I]f commercial development occurs in this area and is adjacent to the corporate boundary, the area should be annexed immediately."

The comprehensive plan classified the section of Highway 75 just to the west of Area #9 as a "rural principal arterial," in that it provided traffic movement for substantial statewide or interstate travel. It noted that increased development to the south of the Bellevue metropolitan area had overloaded existing transportation facilities and increased congestion. A

reconfigured interchange at the northwest corner of Area #9 and a new interchange approximately 1 mile south of Area #9 had been approved as "2030 Street Improvements" by the regional planning agency's "2035 Long Range Transportation Plan," and the same plan approved converting the area of Highway 75 to the west of Area #9 from four to six lanes. The comprehensive plan recommended the "Future Roadway Functional Classification" for the area just west of Area #9 as an "Urban Princip[al] Arterial Roadway."

The comprehensive plan identified the area near the Highway 75 intersection approximately 1 mile south of Area #9 as one "expected to see significant population growth during the planning period" and to become the City's "new southern gateway." It suggested planning a major regional activity center for the area, to include "a regional shopping mall, a number of major employers, and other amenities that support a large area such as dining, entertainment, and public and quasi-public uses." The comprehensive plan contemplated that the activity center would serve residents of Sarpy County and the larger Omaha metropolitan area.

The comprehensive plan considered Area #9 to be developable. It recommended future land use of Area #9 as light industry, heavy industry, and flex space. The term "flex space" was described as supporting a variety of commercial, retail, and industrial uses, as well as helping the market to determine the use of the space. The comprehensive plan based its flex space recommendation on Area #9's proximity to a proposed industrial park and Offutt AFB.

The City admitted in answers to interrogatories received by the district court that it was not aware of any retail establishments within 1 mile of the Darling plant or any proposed or planned development within Area #9.

*District Court's Orders.*

The district court entered separate but identical orders in the Darling action and the Krejci action, finding in favor of Darling and Krejci.

The district court determined that in annexing Area #9, the City had exceeded its statutory authority under § 16-130 because the Darling and Krejci properties were neither urban nor suburban in character and included a substantial portion of agricultural lands which were rural in character. It reasoned that the properties were not located in close proximity to city amenities, they were located in the middle of an isolated and undeveloped part of the county, the predominant use of the properties and the surrounding lands was agricultural, not a single residence existed in Area #9, and the annexation memorandum was silent as to any development plans for the annexed area. The district court noted that the facts in this case were similar to those present in *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952), where this court held that a city had exceeded its authority by annexing agricultural land that was rural in character.

Alternatively, the district court found that the ordinance did not comply with the requirement in § 16-130 that annexed lands be contiguous or adjacent to the city limits. It observed that the City's "boundaries" were not adjacent to the Darling and Krejci properties. Instead, the district court reasoned, the City was attempting to rely on the baseball complex area, an "isolated island of municipal control" completely detached from the body of the City. The district court characterized this as a separate distinct mass that was not a part of the City, such that it could be used for an adjacency connection.

The district court declared the ordinance invalid and void and permanently enjoined the City from taking any action to enforce it. The district court did not address whether the ordinance was enacted for an improper purpose.

The City timely appealed both actions. We docketed its appeals as cases Nos. S-20-405 and S-20-406 and consolidated them for oral argument and disposition.

## ASSIGNMENTS OF ERROR

The City's assignments of error in cases Nos. S-20-405 and S-20-406 are essentially identical. It assigns, consolidated,

that the district court erred by finding (1) that the Darling and Krejci properties were rural in character and thus could not be annexed and (2) that the Darling and Krejci properties were neither contiguous nor adjacent to the City.

## STANDARD OF REVIEW

[1,2] An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity. *SID No. 196 of Douglas Cty. v. City of Valley*, 290 Neb. 1, 858 N.W.2d 553 (2015). On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination. *Id.*

[3] The issue of whether the character of the land to be annexed meets the legal standard prescribed in the statute is a question of law. *Id*. Although the characterization of the land depends on the particular facts of each case, the question of whether the facts fulfill a particular legal standard presents a question of law. *Id.*

## ANALYSIS

*Legal Framework.*

[4,5] We begin by reviewing the legal principles that govern this challenge to the City's proposed annexation. The City's power to annex territory is not absolute. It must be exercised in strict accord with the statute conferring it. See *Cornhusker Pub. Power Dist. v. City of Schuyler*, 269 Neb. 972, 699 N.W.2d 352 (2005). In this case, the City's annexation power is controlled by § 16-130, which provides in relevant part:

(2) . . . [T]he mayor and city council of a city of the first class [located in whole or in part within the boundaries of a county having a population in excess of 100,000 inhabitants but less than 250,000 inhabitants] may by ordinance at any time include within the corporate limits of such city any contiguous or adjacent lands, lots, tracts, streets, or highways as are urban or suburban in character and in such direction as may be deemed proper. Such

grant of power shall not be construed as conferring power upon the mayor and city council to extend the limits of such a city over any agricultural lands which are rural in character.

(3) The invalidity of the annexation of any tract of land in one ordinance shall not affect the validity of the remaining tracts of land which are annexed by the ordinance and which otherwise conform to state law.

In addition to the statutory limitations expressed in § 16-130 and other similar statutes, we have also held that it is improper for an annexation to be solely motivated by an increase in tax revenue. *SID No. 196 of Douglas Cty. v. City of Valley, supra*, citing *Witham v. City of Lincoln*, 125 Neb. 366, 250 N.W. 247 (1933).

[6] The burden is on one who attacks an annexation ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity. *County of Sarpy v. City of Papillion*, 277 Neb. 829, 765 N.W.2d 456 (2009). See, also, *Williams v. County of Buffalo*, 181 Neb. 233, 147 N.W.2d 776 (1967) (passage of ordinance presumes finding that conditions and limitations in delegating statute exist). The City claims Darling and Krejci failed to meet this burden in these cases. We address its arguments below.

*Character of Area #9.*

The City first contends the district court erred in finding that, in annexing Area #9, the City exceeded the power conferred to it by § 16-130(2) to annex lands that are "urban or suburban in character" but not "agricultural lands which are rural in character." We have defined the term "rural" as "of or pertaining to the country as distinguished from a city or town," and we have defined the term "urban" as "of or belonging to a city or town." See *Wagner v. City of Omaha*, 156 Neb. 163, 168, 55 N.W.2d 490, 494 (1952). In asserting that Area #9 is urban or suburban in character, despite being largely used for agriculture, the City points to commercial and industrial establishments and housing developments nearby, as well as

other annexations in the vicinity and future land use designations for Area #9. The City also relies on the opinions of the Sarpy County assessor and its land use planner that Area #9 is urban or suburban in character.

Like the district court, Darling and Krejci primarily analogize this case to *Wagner v. City of Omaha, supra*. In *Wagner*, we held that 90 to 103 acres of unplatted agricultural lands were rural in character. The entire area annexed was composed of 490 acres that, in addition to the unplatted agricultural lands, included 588 dwellings and 2,116 residents, a limited retail area, and several small industries. *Id.* Under the law applicable in *Wagner*, we declared the entire annexation ordinance invalid. Darling and Krejci argue that *Wagner* is dispositive here, given the size and agricultural use of Area #9 and the relative lack of residents, structures, improvements, city services, and development in the immediate area. The annexed area in *Wagner* does share some similarities with Area #9, but as we quite recently observed, our jurisprudence on this topic has developed in the decades since our decision in *Wagner*. See *County of Sarpy v. City of Gretna, ante* p. 320, ___ N.W.2d ___ (2021).

In *County of Sarpy v. City of Gretna, supra*, we reviewed the factors our cases have considered in deciding whether an area is rural or urban or suburban in character. We explained that in addition to current uses, we have considered other factors, including the location of the area, its character, its proximity to growth areas, the degree of development of the land involved, and contemplated future development. *Id.*, citing *SID No. 196 of Douglas Cty. v. City of Valley*, 290 Neb. 1, 858 N.W.2d 553 (2013); *Swedlund v. City of Hastings*, 243 Neb. 607, 501 N.W.2d 302 (1993); *Voss v. City of Grand Island*, 186 Neb. 232, 182 N.W.2d 427 (1970); *Sullivan v. City of Omaha*, 183 Neb. 511, 162 N.W.2d 227 (1968); *Bierschenk v. City of Omaha*, 178 Neb. 715, 135 N.W.2d 12 (1965); and *Wagner v. City of Omaha, supra.* We thus proceed to consider the evidence in our record as to those factors.

We look first to Area #9's location. The district court characterized Area #9 as "isolated" and "well removed from the [C]ity." It likened Area #9 to the rural lands in *Wagner v. City of Omaha, supra*, and distinguished it from the annexed area in *Swedlund v. City of Hastings, supra*, and *Bierschenk v. City of Omaha, supra*. We recognize differences between Area #9 and the cases distinguished by the district court, but they and other cases are nonetheless instructive because they consider features of an area's location that influence its character. Those features include the disputed area's proximity to housing developments, parks, schools, industry, local thoroughfares, and other common features of urban or suburban life. See, *Swedlund v. City of Hastings, supra*; *Bierschenk v. City of Omaha, supra*. See, also, *Shields v. City of Kearney*, 179 Neb. 49, 136 N.W.2d 174 (1965).

After considering the evidence in the record regarding what is present in the surrounding areas, we conclude that Area #9 is not isolated and is instead near features that suggest an urban or suburban character. Highway 75, a major arterial roadway, runs just outside the western edge of Area #9. On the other side of Highway 75, less than 1 mile from Area #9, are several residential subdivisions and an elementary school. Another residential subdivision, Normandy Hills, is immediately south of Area #9. While not part of the City, we find that Offutt AFB, located less than 1 mile north of Area #9, is also informative as to Area #9's character. The nearby presence of a military base that employs approximately 10,000 people suggests an area that is urban or suburban rather than rural in character. Also within a 1-mile radius of Area #9 at the time of trial were a commercial storage establishment and six industrial establishments, including the Darling plant. Finally, the baseball complex to the east of Area #9, even if attempts to operate it had been unsuccessful as of the time of trial, is also more indicative of an area that is urban or suburban in character than one that is rural in character.

As for current uses, Area #9 is not entirely used for agriculture. A part of Area #9—the Darling plant—has been used

for industrial purposes since the 1940's. The easternmost portion of Area #9 is zoned industrial, and there was no evidence that it had ever been put to any particular use.

[7] Much of Area #9 was zoned and being used for agricultural purposes at the time of trial and had been used in that fashion for years before. But in applying the same statutory requirements to cities of various classes, we have long held that the use of land for agricultural purposes does not necessarily mean it is rural in character. See, e.g., *Swedlund v. City of Hastings, supra*; *Omaha Country Club v. City of Omaha*, 214 Neb. 3, 332 N.W.2d 206 (1983); *Voss v. City of Grand Island*, 186 Neb. 232, 182 N.W.2d 427 (1970). We have said that "[i]t is the nature of its location as well as its use which determines whether it is rural or urban in character." *Sullivan v. City of Omaha*, 183 Neb. 511, 514, 162 N.W.2d 227, 229-30 (1968). We have also emphasized that land need not already be zoned and developed into a nonagricultural use before it can be annexed. See *SID No. 196 of Douglas Cty. v. City of Valley*, 290 Neb. 1, 858 N.W.2d 553 (2015). Instead, lands may be currently utilized in an agricultural fashion and yet, due to other factors, be urban or suburban in character and thus subject to annexation. See *Voss v. City of Grand Island, supra*.

One factor we have found that can render land urban or suburban in character despite being currently put to an agricultural use is contemplated future development. In *SID No. 196 of Douglas Cty. v. City of Valley, supra*, we considered evidence of contemplated future residential development as a justification for the City's classifying the subject property as urban or suburban and upheld the annexation. Similarly, in *County of Sarpy v. City of Gretna, ante* p. 320, 332, ___ N.W.2d ___, ___ (2021), we were not convinced that the city's annexation was invalid, even where its plans for development of the annexed land "will take time." That is to say, future development plans for the annexed land need not be imminent as Darling suggested at oral argument.

Here, the evidence reflects contemplated future development to transition Area #9 from agricultural use to nonagricultural use. According to the comprehensive plan, the City anticipates the whole of Area #9 will be used for industrial and other non-agricultural purposes in the future, based on its proximity to a proposed industrial park and Offutt AFB.

The City was not the only party that envisioned development in Area #9's future. As noted above, the Krejci property was listed for sale. The listing's division of the property into several "small industrial lots," its references to nearby major thoroughfares and the thousands of cars that drive by the property each day, its depiction of the property in reference to nearby developed areas, and its statement that the property was included in the City's "Master Plan for Industrial Use" all suggest that Krejci, a longtime owner and developer of real property in the area, viewed the farmland as ripe for industrial development. Krejci counters that the real estate listing, if anything, demonstrates the rural and agricultural character of the property, because the property has not actually been sold. We are not persuaded. There are many factors that may prevent a property from selling, and we have no evidence that explains in any meaningful detail why Krejci's attempts to market his property as a site for industrial development have not proved successful.

We have also considered evidence of development in the vicinity of the contested area to determine its character. See *County of Sarpy v. City of Gretna, supra*, citing *Bierschenk v. City of Omaha*, 178 Neb. 715, 135 N.W.2d 12 (1965). In this case, the City was not aware of any proposed or planned development of Area #9 itself. However, affidavits by City officials cited continuous and future growth and development in the area as a reason for annexing Area #9. The City's comprehensive plan projected population growth between 2000 and 2030 requiring the City to double its footprint and encouraged the City to annex land before it was developed. In particular, it recommended immediate annexation if commercial development occurred in the region of Area #9. The comprehensive plan

anticipated significant population growth in the area around the intersection southwest of Area #9 and expected it to become the City's "new southern gateway." The comprehensive plan classified the section of Highway 75 bordering Area #9 as a principal arterial and recommended planning a major regional activity center for the area southwest of Area #9. Changes to Highway 75 and intersections near Area #9 had been approved to address existing congestion caused by development in the area and anticipated population growth. Maps in evidence show that in 2019, several neighborhoods just to the west and northwest of Area #9 were annexed as part of the same development plan that annexed Area #9. The City had also initiated procedures to annex the Normandy Hills development immediately south of Area #9.

[8] In evaluating all of this evidence, we also bear in mind that the standard we have articulated for determining whether an annexation is invalid based on the character of the land sought to be annexed is deferential to the municipality. Not only is the proposed annexation presumed to be valid with the challenger bearing the burden to demonstrate invalidity, our test asks whether the city has used the power of annexation "arbitrarily and irrationally . . . to include lands entirely disconnected, agricultural in character, and bearing no rational relation to the legitimate purposes of annexation." *County of Sarpy v. City of Gretna, ante* p. 320, 329, ___ N.W.2d ___, ___ (2021), quoting *SID No. 196 of Douglas Cty. v. City of Valley*, 290 Neb. 1, 858 N.W.2d 553 (2015) (internal quotation marks omitted). See, also, *Voss v. City of Grand Island*, 186 Neb. 232, 182 N.W.2d 427 (1970).

Given the evidence we have discussed regarding Area #9's location, its present use, and its contemplated future uses and existing plans for development, we cannot conclude that the City acted arbitrarily or irrationally in annexing Area #9 or that Area #9 bears no rational relation to the legitimate purposes of annexation. Accordingly, we find that the district court erred in finding the ordinance that annexed Area #9 to be invalid based on the character of Area #9.

We reach this conclusion even though some of the land within Area #9 had greenbelt tax valuation status and the City's planning commission recommended against annexing such land. In *County of Sarpy v. City of Gretna, supra*, we found the greenbelt tax assessment status of the annexed territory not to be evidence of rural character. We reasoned that greenbelt status involved a legislative determination regarding taxation and market value and found nothing to support it as a restriction on the city's annexation authority.

*Contiguous or Adjacent Requirement.*

[9,10] Having concluded that the district court erred in determining that the character of Area #9 precluded the City from annexing it, we must continue on to consider the City's assertion that the district court incorrectly determined that Area #9 was not "contiguous or adjacent" to the City as required by § 16-130. We have used the terms "contiguous" and "adjacent" synonymously to mean adjoining, touching, and sharing a common border. See *County of Sarpy v. City of Papillion*, 277 Neb. 829, 765 N.W.2d 456 (2009). A municipality may annex several tracts as long as one tract is substantially adjacent to the municipality and the other tracts are substantially adjacent to each other. *Id.*

There is no dispute that the Darling property shares a common border with the area of the City that includes the baseball complex and that the Krejci property is substantially adjacent to the Darling property. There is also no argument that the annexation of Area #9 amounted to what we have described as "strip" or "corridor" annexation, in which a municipality impermissibly attempts to establish adjacency by seeking to annex a relatively narrow piece of land bordering its corporate limits to reach a larger tract of land some distance away. See, e.g., *County of Sarpy v. City of Gretna*, 273 Neb. 92, 727 N.W.2d 690 (2007); *Cornhusker Pub. Power Dist. v. City of Schuyler*, 269 Neb. 972, 699 N.W.2d 352 (2005); *Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20 (1992). This, the City contends, should be the beginning and the end of

any argument as to whether Area #9 is contiguous and adjacent to the City.

The district court, however, was persuaded by Darling's and Krejci's argument that the annexation was invalid because the area that includes the baseball complex did not share a border with the rest of the City. The district court dubbed this an "island" annexation and determined it was contrary to the adjacency requirement of § 16-130. The district court found support for its conclusion in *County of Sarpy v. City of Papillion, supra*. In that case, we observed that our prior cases had explained the reason for the adjacency requirement "is the idea that a city, both by name and use, is one entity, a collective body of people gathered together in one mass, not separated into distinct masses, and having a community of interest because they are residents of the same place." *Id.* at 837, 765 N.W.2d at 464.

We find that Area #9 is adjacent and contiguous to the City for purposes of § 16-130. Darling's and Krejci's true adjacency objection is to the 2009 annexation of the area that includes the baseball complex. That area does indeed appear to be isolated from the rest of the City, and its annexation may well have created "distinct masses" within the City. See *County of Sarpy v. City of Papillion, supra*. But the annexation of the area including the baseball complex was not before the district court in this case, and it is not before us now. Not only was that annexation not challenged in this case, but under Neb. Rev. Stat. § 18-1718 (Reissue 2012), any action or proceeding brought to contest an annexation by a city must be brought within 1 year from the effective date of the annexation or be forever barred. Even if the annexation of the area including the baseball complex was improper, the time for challenging it has long since expired.

Because the area including the baseball complex was annexed into the City and was not subject to challenge in this case, it can be used to establish adjacency. And there is no dispute that Area #9 is adjacent and contiguous to the area of the City that includes the baseball complex. Consequently, the

district court erred in finding that Area #9 was not contiguous or adjacent to the City under § 16-130.

*Purpose of Annexation.*

In addition to the arguments discussed above, Darling and Krejci alleged in the district court that the annexation was invalid because it was solely motivated by an increase in tax revenue. They now argue that we should affirm the district court's decisions on this basis.

The district court, however, found it dispositive that the ordinance was invalid under the character and adjacency requirements of § 16-130, and it did not address the improper purpose challenges. We will not consider this issue that has not been addressed by the district court. See, e.g., *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 853 N.W.2d 169 (2014). However, because Darling and Krejci challenged the annexation ordinance on this basis, we remand the causes to the district court for further proceedings to consider Darling's and Krejci's improper purpose challenges. See *id.*

## CONCLUSION

For the reasons explained above, we reverse the decisions of the district court finding that Area #9 did not satisfy the requirements of § 16-130 and remand the causes for further proceedings.

Reversed and remanded for
further proceedings.

Miller-Lerman, J., not participating.

Cassel, J., concurring.

In *County of Sarpy v. City of Gretna*,[1] a majority of this court untethered certain municipalities[2] from the traditional understanding of the statutory prohibition against annexation

---

[1] *County of Sarpy v. City of Gretna, ante* p. 320, ___ N.W.2d ___ (2021).

[2] See Neb. Rev. Stat. § 17-407(2) (Cum. Supp. 2020) (applicable to cities of second class and villages located wholly or partially within county having population greater than 100,000 but less than 250,000).

of "agricultural lands which are rural in character."[3] Although I dissented from that decision, I recognize that it is now binding precedent.[4]

The statutory language applicable here governing certain other cities[5] is in all relevant respects identical to the statute in *City of Gretna*.[6] Unsurprisingly, the court's language here follows that precedent. At least, in the instant case, the tracts at issue were essentially surrounded by properties which might reasonably be characterized as urban or suburban in character.

But this court's path rewards municipal overreach in a race to extend boundaries to capture future growth in Sarpy County. This court should not be "shocked"[7] at the wave of preemptive annexations likely to follow.

---

[3] See Neb. Rev. Stat. § 16-117 (Cum. Supp. 2020). Accord, *County of Sarpy v. City of Papillion*, 277 Neb. 829, 765 N.W.2d 456 (2009); *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952).

[4] See, e.g., *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

[5] See Neb. Rev. Stat. § 16-130(2) (Cum. Supp. 2020) (applicable to cities of first class located wholly or partially within county having population greater than 100,000 but less than 250,000).

[6] See, *City of Gretna, supra* note 1; § 17-407(2).

[7] See Casablanca (Warner Bros. 1942).