Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/24/2023 09:06 AM CDT

Darling Ingredients Inc., formerly known as
Darling International Inc., and Darling
National LLC, appellants, v. City of
Bellevue, a Nebraska municipal
corporation, appellee.

___ N.W.2d ___

Filed March 24, 2023.    No. S-22-164.

1. **Judgments: Appeal and Error.** The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.
2. **Annexation: Ordinances: Equity.** An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity.
3. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
4. **Appeal and Error: Words and Phrases.** In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order.
5. **Courts: Appeal and Error.** When a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate.
6. **Judgments: Courts: Appeal and Error.** When the judgment of a trial court is reversed on appeal and the cause remanded without specific instructions, it is the duty of the trial court to exercise its discretion in the further disposition of the case.

7. **Annexation: Taxation.** It is improper for an annexation to be solely motivated by an increase in tax revenue.
8. **Ordinances: Proof.** The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.

Appeal from the District Court for Sarpy County: Nathan B. Cox, Judge. Affirmed.

Michael S. Degan, of Kutak Rock, L.L.P., for appellants.

Bree Robbins, Bellevue City Attorney, for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Engleman, District Judge.

Funke, J.

## INTRODUCTION

For the second time, a challenge by Darling Ingredients Inc. and Darling National LLC (collectively Darling) to an annexation ordinance enacted by the City of Bellevue (the City) is before this court. Previously, in *Darling Ingredients v. City of Bellevue* (*Darling I*),[1] Darling and Frank R. Krejci sought to invalidate and permanently enjoin the City's ordinance on three bases. The district court for Sarpy County found for Darling and Krejci on the first two bases and, as such, did not address the third. After consolidating Darling's and Krejci's appeals, we reversed the district court's decisions. We remanded the causes for further proceedings to consider Darling's and Krejci's third basis for relief—their claims that the City enacted the ordinance for an improper purpose. On remand, the district court entered judgment for the City. Darling appeals the judgment, but Krejci does not. For the reasons stated below, we affirm.

---

[1] *Darling Ingredients v. City of Bellevue*, 309 Neb. 338, 960 N.W.2d 284 (2021).

## BACKGROUND

### *Darling I*

In 2019, the City considered an annexation package made up of several sanitary and improvement districts and unincorporated parcels of land in its extraterritorial jurisdiction. The City ultimately adopted ordinances annexing various areas, including a portion of land referred to as "Area #9." Area #9 consisted of properties owned by Darling and Krejci. Darling and Krejci separately brought complaints against the City. Both alleged that the City had exceeded its annexation authority under Neb. Rev. Stat. § 16-130(2) (Reissue 2022), which provides that the mayor and city council of a "city of the first class" described in § 16-130(1) may

> by ordinance at any time include within the corporate limits of such city any contiguous or adjacent lands, lots, tracts, streets, or highways as are urban or suburban in character and in such direction as may be deemed proper. Such grant of power shall not be construed as conferring power upon the mayor and city council to extend the limits of such a city over any agricultural lands which are rural in character.

Both alleged, also, that the ordinance was invalid because it was enacted for an improper purpose. Specifically, they argued that the City enacted the ordinance solely for the purpose of increasing revenue.[2] The two cases were consolidated for discovery and trial.

Following trial, the district court declared the City's ordinance invalid under § 16-130, reasoning that Area #9 was rural in character and neither contiguous nor adjacent to the City. The district court permanently enjoined the City from taking any action to enforce the ordinance. The court did not address whether the ordinance was enacted for an improper

---

[2] See *id.* See, also, *SID No. 196 of Douglas Cty. v. City of Valley*, 290 Neb. 1, 858 N.W.2d 553 (2015) (it is improper for annexation to be solely motivated by increase in tax revenue).

purpose. The City appealed both actions, which we consolidated for oral argument and disposition. Upon review, we concluded that the annexation of Area #9 was not invalid based on the character of the use and that Area #9 was adjacent and contiguous to the City for purposes of § 16-130. We reversed the district court's decision that Area #9 did not satisfy the requirements of § 16-130 and "remand[ed] the causes to the district court for further proceedings to consider Darling's and Krejci's improper purpose challenges."[3]

## Order After Remand

Following our ruling in *Darling I*, the district court met in camera with counsel for the parties and requested arguments as to our direction of "remand the causes for further proceedings." After considering the arguments of counsel, the district court concluded that our mandate did not order a retrial or direct the district court to reopen the evidence, but, rather, it ordered the district court "merely to consider the evidence and argument from the parties at trial and decide the sole issue of improper purpose" as distinguishable from any party having a "'second bite at the apple.'"

Upon review, the court entered an order determining that Darling and Krejci failed to meet their burden of establishing that the City's annexation was motivated by an improper purpose. Based on the evidence presented at trial, the court was unconvinced that the City's annexation was solely motivated by an increase in tax revenue. The court found that no evidence negated its finding that the City acquired Area #9 as part of a larger plan to annex numerous properties for the stated purpose of the "natural growth and development of the [C]ity." The natural growth and development of the City, the court explained, was a legitimate purpose for the annexations, including that of Area #9.

---

[3] *Darling I, supra* note 1, 309 Neb. at 357, 960 N.W.2d at 298.

## ASSIGNMENTS OF ERROR

Darling assigns, consolidated and restated, that the district court erred in (1) failing to properly carry into effect the mandate of this court in *Darling I* and (2) finding that the City's annexation was not motivated by an improper purpose based on the evidence received at the prior trial.

## STANDARD OF REVIEW

[1] The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[4]

[2,3] An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity.[5] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[6]

## ANALYSIS

### Construction of Mandate

In *Darling I*, we reversed the district court's judgment and remanded the causes for further proceedings "to consider Darling's and Krejci's improper purpose challenges."[7] Darling asserts that upon remand, the trial court was required to hold a new trial or "other proceeding" allowing for the introduction of additional evidence on its improper purpose challenge.[8] We disagree.

[4-7] In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which

---

[4] *Barnett v. Happy Cab Co*., 311 Neb. 464, 973 N.W.2d 183 (2022).

[5] *SID No. 196 of Douglas Cty., supra* note 2.

[6] *Id.*

[7] *Darling I, supra* note 1, 309 Neb. at 357, 960 N.W.2d at 298.

[8] Brief for appellant at 10.

the appeal originated for further action in accordance with the remanding order.[9] When a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate.[10] When the judgment of a trial court is reversed on appeal and the cause remanded without specific instructions, it is the duty of the trial court to exercise its discretion in the further disposition of the case.[11]

As previously mentioned, at trial in this matter, Darling raised alternative bases for invalidating the annexation ordinance, namely that Area #9 was neither adjacent to nor contiguous with the existing City limits, that the land was agricultural and rural in character rather than urban or suburban, and that the ordinance was enacted for an improper purpose. As such, proof on all three of Darling's bases for relief was fully presented at trial. At the close of the evidence, the district court found for Darling on the first two bases; upon review, we concluded this was error and reversed the trial court's decision.[12] But we observed that the trial court did not render any decision as to Darling's third basis for relief.[13] Thus, we remanded the cause for further proceedings so that the trial court could consider Darling's improper purpose challenge.[14]

On remand, the district court considered the evidence offered at the original trial and ruled that Darling had not met its burden of establishing that the City annexed Area #9 for an improper purpose. Darling contends that the district

---

[9] *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020).

[10] *Id.*

[11] See *Sowerwine v. Central Irrigation District*, 91 Neb. 457, 136 N.W. 44 (1912).

[12] See *Darling I, supra* note 1.

[13] See *id.*

[14] See *id.*

court erred in declining to reopen the matter for further pleadings, discovery, and trial because our remand "reset" Darling's position.

It is true, as a general rule, that a remand on the merits resets the parties back to their positions before the trial.[15] However, there are exceptions to that rule.[16] For example, we have recognized exceptions where the undisputed facts are such that only one judgment can be rendered[17] or where a case is reversed for error committed after the trial.[18] Other jurisdictions have recognized another exception where an issue has been tried but not yet decided by the trial court.[19] The obvious basis for each exception is one congruent with our precedents—we are inclined to avoid retrial of issues for "no good reason."[20] Thus, notwithstanding the general rule to which Darling refers, if no specific directions are given on remand, the trial court must determine what further proceedings should be had from the nature of the particular case.[21]

Our opinion and mandate in *Darling I* did not direct that any specific action be taken by the district court other than to consider Darling's improper purpose claim. Accordingly, upon remand, the district court had the authority to allow the

---

[15] *TransCanada Keystone Pipeline, supra* note 9.

[16] See, e.g., *Bohmont v. Moore*, 141 Neb. 91, 2 N.W.2d 599 (1942) (citing *Bliss v. Live Stock Nat. Bank*, 124 Neb. 880, 248 N.W. 645 (1933)).

[17] See, e.g., *TransCanada Keystone Pipeline, supra* note 9; *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017); *Bohmont, supra* note 16.

[18] See *Missouri, Kansas & Texas Trust Co. v. Clark*, 60 Neb. 406, 83 N.W. 202 (1900).

[19] See 5 C.J.S. *Appeal and Error* § 1184 (2019) (citing *Recontrust Co. v. Zhang*, 130 Nev. 1, 317 P.3d 814 (2014), and *Ruff v. Raleigh Assembly of God Church*, 241 S.W.3d 876 (Tenn. App. 2007)).

[20] See *Missouri, Kansas & Texas Trust Co., supra* note 18, 60 Neb. at 407, 83 N.W. at 203.

[21] See 5 C.J.S., *supra* note 19, § 1156.

parties to amend the pleadings, complete additional discovery, and offer new evidence at another trial, but it also had the authority to merely consider the evidence already received.[22] The district court had discretion as to how to proceed, and deciding the case without receiving additional evidence was within the scope of our broad mandate.[23]

Darling emphasizes that by effectively terminating proceedings, the district court's judgment following remand precluded Darling from presenting "new" evidence relevant to its improper purpose argument. But the new evidence that Darling alludes to is not before us, nor was it ever before the district court. Nothing within our appellate record indicates that Darling formally sought leave to amend the pleadings, seek additional discovery, or offer new evidence at a subsequent trial. Additionally, nothing in the record indicates what amendments to the pleadings would have been, how additional discovery was necessary, or what new evidence would have been offered at a subsequent trial. As such, we cannot find that the district court abused its discretion in resolving Darling's improper purpose argument on the record the court had before it.[24]

## Purpose of Annexation

[7,8] Darling argues that the district court erred in not finding that the annexation of Area #9 was for an improper

---

[22] Cf. *deNourie & Yost Homes, supra* note 17. See, also, *Sowerwine, supra* note 11 (where case is remanded generally, trial court has discretion as to further proceedings); *Colby v. Foxworthy*, 78 Neb. 288, 110 N.W. 857 (1907) (where case is remanded generally, whether to proceed from point where first material error occurred or award trial de novo is within sound discretion of trial court).

[23] Cf. *deNourie & Yost Homes, supra* note 17.

[24] See, e.g., *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011) (appellate court cannot consider as evidence statements made by parties at oral argument or in briefs, as these are matters outside record).

purpose. It is improper for an annexation to be solely motivated by an increase in tax revenue.[25] Proving that the City acted pursuant to this improper purpose is Darling's burden; the burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.[26]

As the district court observed, there is substantial evidence that the natural growth and development of the City was a factor in the City's decision to annex properties, including Area #9. The City's comprehensive plan indicates that the City existed as a total of 10,601 acres and needed to acquire 7,835 additional acres to accommodate expected population growth by 2030. The plan encourages the City to monitor "future-growth" areas and be prepared to annex land before it is developed. The plan includes detailed annexation goals and explains that the City's planning department conducts an annual study consisting of a cost-benefit analysis of potential areas for annexation. The study considers costs, including sanitary improvement district debt, infrastructure repair, upkeep, and additional manpower and equipment necessary to provide city services. The study considers benefits, including sanitary improvement district funds, property tax revenues, and sales tax revenues. Areas as to which the costs "significantly outweigh" the benefits are generally not considered for annexation.

Referring to the general area where Area #9 is located, the City's comprehensive plan recommends the establishment of a large industrial park. The plan states, "[I]f commercial development occurs in this area and is adjacent to the corporate boundary, the area should be annexed immediately." The plan considers Area #9 developable, recommending future land use of Area #9 as light industry, heavy industry, and

---

[25] See *SID. No. 196 of Douglas Cty., supra* note 2.

[26] *Id*.

flex space.[27] The term "flex space" is described as supporting a variety of commercial, retail, and industrial uses.[28]

Further, on May 15, 2019, the City's planning director sent a memorandum to the mayor, the city administrator, and the city council. The memorandum provides:

> As a result of its recent Strategic Planning session, the City is taking the position that it is in its best interest to annex areas adjacent to the existing city limits [including Area #9]; it is also part of the natural growth and development of a city. . . .
>
> The City will . . . begin receiving property tax revenue from these areas beginning in 2020. . . . [T]he increase in property tax receipts for the City would be approximately $157,000 . . . . In addition . . . the City will receive an additional $75,000 in State Highway Allocation funding, plus other revenue including such things as sales taxes on items delivered to these areas.

The city planning director's memorandum includes the planning department's recommendation that the City annex Area #9 "based upon the positive financial impact on the City and the natural growth and development of the City." The city council subsequently voted to adopt the ordinance annexing Area #9.

The appellate record also contains the affidavit of the city administrator. His affidavit provides that recent annexations, including that of Area #9, all contributed to the overall growth and development of the City. Specifically, he states that the annexations occurred "to continue the cohesive unity of [the] community, provide for connectivity of [the] community, work on filling 'gaps' within the City, and work towards continued growth for the City of Bellevue." The city administrator explained that Area #9 was not considered for annexation

---

[27] See *Darling I, supra* note 1.

[28] *Id*.

solely for revenue purposes. Further, he explained that the City would provide services to Area #9, including fire protection, police services, road maintenance, and snow removal, as well as consider the roads and infrastructure needs for the unincorporated areas annexed.

The district court also received the affidavit of the land use planner for the City's planning department. Her affidavit corroborated that Area #9 was annexed in order to continue the growth and development of the City and "fill gaps" in the community. She indicated that the City planned to provide services, including fire services, police services, and road maintenance to Area #9 on the effective date of its annexation. She also averred that the public works department requested an additional $35,000 for its annual budget to fulfill the needs of "annexations in . . . unincorporated areas" and that there would be a review and a plan for infrastructure needs in the future.

After consideration of the evidence presented at trial, the district court concluded that the City was motivated to annex Area #9, at least in part, to foster the natural growth and development of the City. The record on appeal demonstrates the same. Assuredly, the City considered the financial impacts of potential annexations as well. But prudent annexation planning compels the City to consider any revenue to be engendered by annexation, in light of the liabilities to be incurred.[29] Accordingly, our cases recognize that the legal proscription against annexation solely for revenue purposes does not mean that a municipality cannot consider potential revenues in deciding whether to proceed with an annexation.[30] *United*

---

[29] *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995), *disapproved on other grounds, Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004).

[30] *United States Cold Storage v. City of La Vista*, 285 Neb. 579, 831 N.W.2d 23 (2013).

*States Cold Storage v. City of La Vista*[31] is an illustrative example.

In *United States Cold Storage*, a property owner and a sanitary and improvement district challenged separate annexation ordinances enacted by a city.[32] In particular, the property owner and the sanitary improvement district argued that the city had acted solely for the purpose of obtaining revenue.[33] Noting evidence that the city had considered and been influenced by several other factors, the district court concluded that the property owner had failed to meet its burden of proving that the annexation ordinances were improper.[34] Upon review, we agreed with the district court.[35] Although revenue was "surely a factor," the city had considered other factors, including the indebtedness the city would assume by annexation, the city's objective of "orderly growth," and the perception that the annexation would eliminate jurisdictional issues related to the provision of services.[36] We accordingly affirmed.[37] Similarly, in *Swedlund v. Hastings*,[38] *SID No. 196 of Douglas Cty. v. City of Valley*,[39] and other cases,[40] we determined that interested parties failed to meet their burden of proving that an annexation was enacted for an improper purpose even though revenue was considered.

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] See *id.*

[35] See *id.*

[36] *Id.* at 589, 831 N.W.2d at 32.

[37] See *United States Cold Storage, supra* note 30.

[38] *Swedlund v. City of Hastings*, 243 Neb. 607, 501 N.W.2d 302 (1993).

[39] *SID No. 196 of Douglas Cty., supra* note 2.

[40] See, e.g., *SID No. 57, supra* note 29; *S.I.D. No. 95 v. City of Omaha*, 221 Neb. 272, 376 N.W.2d 767 (1985).

Here, the district court concluded that Darling failed to meet its burden of establishing that the City acted for an improper purpose. Upon review of the evidence, we agree. Although tax revenue was considered and likely a factor in the City's decision to annex, Darling has not met its burden of proving that the City was motivated to annex Area #9 solely for the purpose of increasing tax revenue. Accordingly, we find no error in the district court's decision.

## CONCLUSION

The district court did not err in either assigned respect, and its judgment is accordingly affirmed.

Affirmed.

Miller-Lerman, J., not participating.